IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2006 MAR 22 P 1:55

| | |
|---|---|
| ISAAC HENDRIX, SR., as Personal Representative of the Estate of Essie Mae Hendrix, deceased, <br><br> Plaintiff, <br><br> v. <br><br> MERCK & CO., INC.; LEON CASALS, M.D.; and A-R, <br><br> Defendants. | ) ) ) ) ) ) ) ) CIVIL ACTION NUMBER: ) ) 2:06cv265-SRW ) ) ) ) ) |

## NOTICE OF REMOVAL

COMES NOW defendant Merck & Co., Inc. ("Merck") and gives notice, with full reservation of all defenses, that this cause is hereby removed from the Circuit Court of Montgomery County, Alabama, to the United States District Court for the Middle District of Alabama, Northern Division, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. As and for its notice of removal, Merck shows unto the Court as follows:

1. This lawsuit is a civil action within the meaning of the Acts of Congress relating to removal of cases. *See* 28 U.S.C. §§ 1441(b), 1446(b). This action involves allegations regarding the prescription drug VIOXX®. On February 16, 2005, the Judicial Panel on Multidistrict Litigation issued an order transferring

1/1430027.2

148 VIOXX® products liability cases to the United States District Court for the Eastern District of Louisiana (Fallon, J.) for coordinated pretrial proceedings under 28 U.S.C. § 1407. The MDL Panel has also issued 43 conditional transfer orders, conditionally transferring over 3,000 additional VIOXX® cases to that Multidistrict Litigation, *In re VIOXX Products Liability Litigation,* MDL No. 1657. Merck will shortly provide the MDL Panel with notice of this action pursuant to the "tag-along" procedure.

2. On or about February 10, 2006, Plaintiff Isaac Hendrix, Sr., as Personal Representative of the Estate of Essie Mae Hendrix, deceased, ("Plaintiff") commenced this action against Merck; Leon Casals, M.D. ("Dr. Casals"); and various fictitious defendants by filing a Complaint in the Circuit Court of Montgomery County, Alabama, bearing Case Number CV-06-390 (the "Complaint"). On or about March 17, 2006, the Defendant Leon Casals, M.D. filed a Motion to Dismiss in the Circuit Court of Montgomery County, Alabama. In his Motion to Dismiss, Dr. Casals asserts that the venue of the action is improper, the Plaintiff's claim is barred by the applicable statute of limitations and the complaint fails to state a claim upon which relief can be granted. (Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon the defendant, which papers include the summonses and complaints, is attached as Exhibit A.)

3. As more fully set out below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 and Merck has satisfied the procedural requirements for removal.

4.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states, in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest.

## I. COMPLETE DIVERSITY OF CITIZENSHIP EXISTS BETWEEN PLAINTIFF AND THE PROPER DEFENDANT.

5.   There is complete diversity of citizenship between Plaintiff and the properly joined defendant.

6.   Upon information and belief, Plaintiff is, and was at all relevant times, a resident of the State of Alabama. *See* Compl., ¶¶ 1. Moreover, Plaintiff brings this action as the personal representative of the estate of his decedent, Essie Mae Hendrix. Upon information and belief, the decedent also was a resident of Alabama. Compl., ¶ 50. Therefore, Plaintiff is a citizen of Alabama for purposes of determining diversity. 28 U.S.C. § 1332(a); 1332(c)(2).

7.   Defendant Merck is, and was at the time of the institution of this action, a corporation organized and existing under the laws of the State of New Jersey with its principal place of business in the State of New Jersey. Compl. ¶ 2. Therefore, Merck is not now, and was not at the time of the filing of the Complaint, a citizen of the State of Alabama for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

8.   The complaint also purports to state claims against unnamed, fictitious defendants identified as defendants A through R. For purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a).

9. For the reasons set forth below, the remaining defendant, Dr. Casals (the "Physician Defendant"), is fraudulently joined. Therefore, his citizenship must be ignored for the purpose of determining the propriety of removal.[1] *See, e.g., Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1359-1360 (11th Cir. 1996), *abrogated on other grounds, Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

## II. THE PHYSICIAN DEFENDANT HAS BEEN FRAUDULENTLY JOINED BECAUSE THERE IS NO POSSIBILITY THAT PLAINTIFF CAN STATE A CAUSE OF ACTION AGAINST HIM.

10. There is complete diversity in this case because the purportedly non-diverse Physician Defendant has been fraudulently joined. Specifically, in light of the factual allegations in the Complaint, "there is no possibility that the plaintiff[s] can prove a cause of action against the resident (non-diverse)" defendant. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

11. Plaintiff alleges that Dr. Casals prescribed Vioxx (rofecoxib) to decedent Hendrix. Compl. ¶¶ 3. Plaintiff does not allege that the Physician Defendant manufactured, designed, tested, labeled, warranted, or sold Vioxx. *See generally* Compl.

12. In a products liability action involving a prescription drug, a resident physician is fraudulently joined when, as here, conclusory allegations of the physician's knowledge are contradicted by specific allegations that the manufacturer defendant concealed information from the general public, including

---

[1] The Complaint does not allege the citizenship of the Physician Defendant, only that he is licensed and does business in the State of Alabama. *See* Compl. ¶¶ 3.

health care providers. *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 295 (S.D.N.Y. 2001) (Alabama resident physician was fraudulently joined in products liability action against drug manufacturer, where plaintiffs' specific allegations that the manufacturer misrepresented and concealed material facts about the safety and efficacy of its drug refuted the assumption that the physician had knowledge of the drug's harmful effects); *Spier v. Bayer Corp. (In re Baycol Products Litigation)*, 2003 WL 21223842, at *2 (D. Minn. May 27, 2003) (plaintiff's conclusory allegation that resident physician "knew or should have known" of drug's risks was insufficient to defeat a finding of fraudulent joinder, where the "main thrust" of the action was that the manufacturer defendants had misrepresented the drug's risks and failed to adequately warn of such risks).

13. Put another way, "in light of plaintiff's myriad allegations that the defendants withheld information concerning the risks of [a prescription medication] from physicians . . . an entirely conclusory allegation that the physician failed to warn of risks of [that medication] is insufficient" to provide a basis for recovery against the non-diverse defendant. *In re Rezulin Prods. Liab. Litig.*, No. 00 CIV 2843 (LAK), MDL No. 1348, Pretrial Order No. 122, slip op. at 1 (Jan. 6, 2003) (Exh. B). Numerous other decisions have employed this same analysis to conclude that pharmacies or physicians had been fraudulently joined to defeat federal diversity jurisdiction.[2]

---

[2] *See Smith v. Bayer Corp. (In re: Baycol Prods. Litig.)*, Case No. 02-139, MDL No. 1431, slip op. at 4 (D. Minn. May 24, 2002) (ruling that pharmacy "cannot be held liable for failing to warn of unknown risks") (Exh. C); *Louis v. Wyeth-Ayerst Pharms., Inc.*, No. 5:00CV102LN, at 4-5 (S.D. Miss. Sept. 25, 2000) (denying remand because pharmacy defendants lacked "knowledge or reason to know of any of the dangers associated with the product(s)") (Exh. D); *cf. In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-07 (S.D.N.Y. 2001).

14. That is precisely the case here. Plaintiff's Complaint includes "myriad allegations" that Merck (the "Pharmaceutical Company Defendant") misrepresented and concealed the risks associated with Vioxx from both patients and physicians.[3] For example, Plaintiff alleges as follows:

(a) "Defendants concealed the serious cardiovascular risks associated with Vioxx." Compl. ¶ 7.

(b) "If Defendants had not engaged in this conduct, **prescribers such as Plaintiff's decedent's treating physicians would not have prescribed Vioxx**." *Id.* ¶ 8 (emphasis added).

(c) Defendants "fail[ed] to warn of the clear and present danger posed to others by the use of their drug, Vioxx," and made "deliberate and misleading misrepresentations of fact to minimize the danger or **to mislead prescribers and patients as to the true risk**." *Id.* ¶ 12 (emphasis added).

(d) Defendants "[f]ailed to adequately warn Plaintiff's decedent and **her health care providers** that use of Vioxx carried a risk of cardiovascular events, stroke and death." *Id.* ¶ 16(e) (emphasis added).

(e) Defendants "**[f]ailed to adequately and timely inform the health care industry of the risks of serious personal injury and death** from Vioxx ingestion." *Id.* ¶ 16(i) (emphasis added).

(f) "Defendants made misrepresentations and actively concealed adverse information at a time when the Defendants knew, or should have known,

---

[3] The fact that each count of the Complaint is pleaded generally against all "Defendants" does not defeat fraudulent joinder where it is evident from the context that the claims cannot be referring to the Physician Defendant. *See Louis v. Wyeth-Ayerst Pharms., Inc.*, No. 5:00CV102LN, at 3 n.2 (S.D. Miss. Sept. 25, 2000) (Exh. D); *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 391-93 (5th Cir. 2000). Here, although Counts I through VII are pleaded against "Defendants" generally, it is clear from the context that they are directed solely to the Pharmaceutical Company Defendant, not to the Physician Defendant.

1/1430027.2

that Vioxx had defects, dangers, and characteristics that were other than what the Defendants had represented to Plaintiff's decedent and the health care industry generally." *Id.* ¶ 26.

(g) "Defendants made the misrepresentations and actively concealed information about the defects and dangers of Vioxx with the intention and **specific desire that Plaintiff's decedent's health care professionals and the consuming public would rely** on such or the absence of information in selecting Vioxx as treatment." *Id.* ¶ 33 (emphasis added).

15. In stark contrast to the above allegations that the Pharmaceutical Company Defendant misrepresented and concealed the true risks of Vioxx, Plaintiff asserts in a wholly conclusory manner that the Physician Defendant "negligently, wantonly, and/or wrongfully" prescribed Vioxx "with actual and/or constructive knowledge of the risks and dangers associated with the use of Vioxx." *Id.* ¶ 54. These conclusory allegations, juxtaposed with the claims that the Pharmaceutical Company Defendant hid the "risks and dangers" associated with the use of this medication, demonstrate that the Physician Defendant has been fraudulently joined.

16. First, the Complaint does not include any factual assertions to support Plaintiff's allegation against the Physician Defendant. *See Spier,* 2003 WL 21223842 at *2 (finding fraudulent joinder where plaintiff did not include "any factual assertions" in her complaint to support her conclusory allegation that physician "knew or should have known" of drug's risks).

17. Second, Plaintiff's allegation that the Physician Defendant knew or should have known of the dangers associated with Vioxx is incompatible with his repeated assertions that the Pharmaceutical Company Defendant

misrepresented the true dangers associated with Vioxx and concealed those dangers from the health care community, including Vioxx prescribers such as the Physician Defendant. Indeed, Plaintiff specifically alleges in paragraph 16(i) of the Complaint that the Pharmaceutical Company Defendant "[f]ailed to adequately and timely inform the health care industry of the risks of serious personal injury and death from Vioxx ingestion." Notably, even the Plaintiffs' Steering Committee in the VIOXX® MDL has recognized that joinder of physicians as defendants is generally improper in cases such as this where the claims against Merck are "by and large incompatible with a claim that the doctor is at fault." (See In re VIOXX MDL, Pls. Mem. in Supp. of Mot. to Modify Order of June 6, 2005 Regarding Physician Contacts, at 3 (attached hereto as Ex. E).) A number of courts have agreed. *See Omobude v. Merck & Co., Inc.*, No. 3:03CV528LN, slip op. at 4 (S.D. Miss. Oct. 3, 2003) (attached hereto as Exhibit F) (physician fraudulently joined where plaintiff alleged that "Merck withheld and concealed and misrepresented the true facts regarding Vioxx; and yet, without alleging any factual basis for the charge, plaintiff conclude[d] that [physician] 'knew or should have known' the truth about Vioxx"); *Baisden v. Bayer*, 275 F. Supp. 2d 759, 763 (S.D. W. Va. 2003) (physician fraudulently joined where the "gravamen of the malpractice case against [physician] is his failure to know what allegedly was deliberately hidden" by drug manufacturer); *In re Rezulin Prods. Liab. Litig.*, 2002 WL 31852826, *2 (S.D.N.Y. Dec. 18, 2002) (non-diverse physician defendant fraudulently joined where "main tenor of plaintiffs' complaint is that [drug] was an unsafe drug and that the manufacturers concealed its risks from the public, physicians, and others"); *In re Diet Drugs*, 220 F. Supp. 2d 414, 424 (E.D. Pa. 2002) (same).

1/1430027.2

18. As the Baycol MDL Court has held, a non-diverse physician defendant is fraudulently joined where, as here, the plaintiff alleged that the Pharmaceutical Company Defendants had misrepresented and suppressed information concerning the safety and efficacy of Baycol, yet also alleged that the physician was negligent in his prescription of Baycol. *Spier*, 2003 WL 21223842, at *2. In that case, the plaintiff's main allegations were that Bayer and GSK misrepresented the alleged risks of Baycol and failed to warn of such alleged risks. Plaintiff also made a conclusory allegation that the non-diverse physician defendant negligently prescribed Baycol. *Id.* The MDL Court agreed that a conclusory allegation that the physician "'knew or should have known'" of the alleged risks was inadequate to "defeat a finding of fraudulent joinder" because "Plaintiff has failed to show that [the doctor] knew or should have known of the serious risks associated with Baycol." *Id.*

19. The same is true in this case. Plaintiff repeatedly alleges that the Pharmaceutical Company Defendant misrepresented or suppressed facts about Vioxx from the public, including doctors, then also allege, in wholly conclusory terms, that the Physician Defendant was negligent in prescribing Vioxx to decedent Hendrix. Plaintiff has not included any "factual assertions" in his complaint to support the conclusory allegation that the non-diverse physician was liable for prescribing Vioxx. Consistent with Merck's position that Dr. Casals is fraudulently joined, Dr. Casals also believes that the case against him is without merit. As mentioned earlier, he has already moved for a dismissal of this Complaint, citing that the Complaint fails to state a claim upon which relief can be granted, the claim is barred by the applicable statute of limitations and that venue is improper. *See generally* Dr. Casals' Motion to Dismiss.

20. In light of these allegations, there is "no possibility that the [plaintiffs have] stated a claim against" the non-diverse Physician Defendant, and therefore the Physician Defendant has been fraudulently joined, and his citizenship does not destroy diversity jurisdiction. *Triggs*, 154 F.3d at 1287; *see, e.g., Spier*, 2003 WL 21223842, at *2.

## III. THE AMOUNT-IN-CONTROVERSY REQUIREMENT IS SATISFIED.

21. It is apparent from the face of the Complaint that the plaintiff seeks recovery of an amount in excess of $75,000, exclusive of costs and interest. Since the Complaint seeks an unspecified amount of damages, Merck must only show that "the amount in controversy more likely than not exceeds the jurisdictional requirement." *See Owens v. Life Ins. Co. of Georgia*, 289 F. Supp. 2d 1319, 1327 (M.D. Ala. 2003) (*quoting Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996)).

22. In this case plaintiff alleges that he "suffered significant and ongoing injury and damages" as a proximate result of the defendants' conduct and decedent Hendrix's use of Vioxx. Compl. ¶ 34. Plaintiff alleges that the Pharmaceutical Company Defendant knew or should have known of the dangers of the medication that led to these alleged injuries. *See, e.g., id.* ¶ 51.

23. Based on these and other allegations, Plaintiff seeks the imposition of exemplary damages, *id.* ¶ 12, and seeks unspecified punitive damages in an amount which will adequately punish the Defendants for their wrongful conduct and negligence which allegedly resulted in the Plaintiff's decedent's injuries and resulting death. *Id.*, unnumbered Demand for Relief.

24. Alabama juries in product liability cases routinely render verdicts in excess of $75,000 exclusive of interest and costs. *See* Exhibit G. Further, appellate courts routinely uphold verdicts in excess of $75,000 in such cases. *See, e.g., Toole v. McClintock*, 999 F.2d 1430 (11th Cir. 1993) (addressing on appeal an award of $400,000 in compensatory damages and $5,000,000 in punitive damages in a medical product liability case); *Benford v. Richards Med. Co.*, 792 F.2d 1537 (11th Cir. 1986) (discussing an award of $165,000 in compensatory and $100,000 in punitive damages in a medical product liability case); Exh. G.

25. Moreover, in circumstances similar to this case, federal courts around the country have ruled that actions alleging personal injuries caused by Vioxx meet the amount-in-controversy threshold. *See, e.g., Morgan v. Merck & Co.*, No. 3:03cv435WS, slip op. at 2 (S.D. Miss. Mar. 29, 2004); *Benavidez v. Merck & Co.*, No. L-03-134, slip op. at 1 (S.D. Tex. Apr. 16, 2004); *Stubblefield v. Merck & Co.*, Civ. No. H-02-3139, slip op. at 1 (S.D. Tex. Oct. 8, 2002); *Zeedyk v. Merck & Co.*, No. 02-C-4203, slip op. at 1 (N.D. Ill. August 30, 2002); *Abrusley v. Merck & Co.*, No. 02-0196, slip op. at 2 n.2 (W.D. La. June 18, 2002); *Jones v. Merck & Co.*, Civ. No. 02-00186, slip op. at 2 (D. Haw. June 5, 2002) (collectively attached hereto as Exhibit H). These courts all were presented with complaints seeking damages for injuries caused by Vioxx, and all found that the requirements for federal diversity jurisdiction, including the amount in controversy, were satisfied.

26. Thus, the amount in controversy plainly exceeds $75,000, exclusive of interests and costs. *See, e.g., Tapscott*, 77 F.3d at 1359.

## IV. THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED.

27. This Notice of Removal is being timely filed pursuant to 28 U.S.C. § 1446(b). The first served defendants were served with a copy of the Summons and Complaint on March 1, 2006. Thus, this Notice of Removal is timely as it is being filed within thirty days of March 1, 2006. See 28 U.S.C. § 1446(b).

28. The United States District Court for the Middle District of Alabama, Northern Division embraces the county in which the removed action was pending. 28 U.S.C. §§ 81(a), 1441(a).

29. Merck is not required to obtain the consent of the other defendant because he is fraudulently joined. *See Clay v. Brown & Williamson Tobacco Corp.*, 77 F. Supp. 2d 1220, 1222 n.3 (M.D. Ala. 1999); *Wiggins v. American Home Products Corp.*, 2001 WL 34013629, *3 (N.D. Ala. 2001).

30. Defendants have sought no similar relief.

31. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Circuit Court of Montgomery County, Alabama. A copy of Merck's filing in state court is attached hereto as Exhibit I.

32. If any question arises as to the propriety of the removal of this action, Merck requests the opportunity to present a brief and oral argument in support of its position that this case is removable.

WHEREFORE, defendant Merck respectfully removes this action from the Circuit Court of Montgomery County, Alabama, bearing civil action number CV-06-390, to this Court, pursuant to 28 U.S.C. § 1441.

1/1430027.2

Dated this 22ND day of March 2006.

                 */s/ George R. Parker*
Philip H. Butler (BUTL1716)
William C. McGowin (MCGOW6770)
George R. Parker (PARKG2248)
BRADLEY ARANT ROSE & WHITE LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700
Facsimile: (334) 956-7701
E-mail: pbutler@bradleyarant.com
        wmcgowin@bradleyarant.com
        gparker@bradleyarant.com

Attorneys for Defendant Merck & Co., Inc.

CERTIFICATE OF SERVICE

I hereby certify that I have this date served the above and foregoing on:

Tom Dutton
Pittman Hooks Dutton Kirby & Hellums, P.C.
2001 Park Place North
1100 Park Place Tower
Birmingham, Alabama 35203

Randal H. Sellers
Starnes & Atchison, LLP
Seventh Floor, 100 Brookwood Place
Post Office Box 598512
Birmingham, Alabama 35259-8512

by placing copies of same in the United States Mail, first-class postage prepaid and addressed to his regular mailing address, on this __22__ day of March, 2006.

Respectfully submitted,

_____
Philip H. Butler (BUTL1716)
William C. McGowin (MCGOW6770)
George R. Parker (PARKG2248)
BRADLEY ARANT ROSE & WHITE LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700
Facsimile: (334) 956-7701
E-mail: pbutler@bradleyarant.com
        wmcgowin@bradleyarant.com
        gparker@bradleyarant.com

Attorneys for Defendant Merck & Co., Inc.

1/1430027.2