IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ISAAC HENDRIX, SR., as Personal Representative of the Estate of Essie Mae Hendrix, deceased, ) ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | CIVIL ACTION NUMBER |
| MERCK & CO., INC.; LEON CASALS, M.D.; et al., ) ) ) | 2:06-cv-265 |
| Defendants. ) | |

## MOTION TO REMAND

Comes now Isaac Hendrix, Sr., as Personal Representative of the Estate of Essie Mae Hendrix, deceased, and pursuant to 28 U.S.C. § 1447(c), moves this Court to remand the above-styled matter back to the Circuit Court of Montgomery County, Alabama. In support of this motion to remand, plaintiff states as follows:

### The Complaint

1.　On February 10, 2006, in the Circuit Court of Montgomery County, Alabama, Isaac Hendrix commenced this civil action by filing a complaint. The named-party defendants were Merck & Co., Inc. and Leon Casals, M.D.

2. In the complaint, Dr. Casals was described as "a physician licensed in the State of Alabama and [doing] business in Montgomery County, Alabama" and as "a treating physician [who] prescribed the brand-name prescription drug, Vioxx (rofecoxib) to ... Essie Mae Hendrix." Complaint ¶ 3.

3. Count VIII of the Complaint is entitled "Medical Malpractice" and asserts a medical-negligence-based claim against Dr. Casals. Complaint ¶¶ 52-54. Specifically, it is alleged that, in Montgomery County, Alabama, Dr. Casals provided medical services and/or treatment to Essie Mae Hendrix. Complaint ¶ 53. Further, it was specifically alleged Dr. Casals "negligently, wantonly and/or wrongfully prescribed and/or provided samples of ... Vioxx, to ... [Essie Mae Hendrix] with actual and/or constructive knowledge of the risks and dangers associated with the use of Vioxx." Complaint ¶ 54. In addition, it was alleged: "If Merck informed [Dr.] Casals of [the cardiovascular] risks [associated with Vioxx ingestion], [Dr.] Casals negligently failed to inform [Essie Mae Hendrix] of those risks." Complaint ¶ 54.

## Dr. Casals' Motion to Dismiss

4. On March 17, 2006, prior the filing of the notice of removal, in the Circuit Court of Montgomery County, Alabama, Dr. Casals filed a motion to dismiss.

5. In his motion, Dr. Casals asserted three distinct grounds: (1) "To the extent any act or omission on the part of this defendant did not take place in Montgomery County, Alabama, the venue of this action is improper;" (2) "It affirmatively appears from the face of the complaint that the plaintiff's claim is barred by the applicable statute of limitations;" and (3) "The complaint fails to state a claim upon which relief can be granted." Motion to Dismiss at 1. Dr. Casals submitted no evidentiary materials or a supporting memorandum brief.

6. As to the first asserted ground in the complaint, Isaac Hendrix factually alleged that Dr. Casals prescribed Vioxx to and/or gave samples of Vioxx to Essie Mae Hendrix in Montgomery County, Alabama. Therefore, if Dr. Casals' alleged medically negligent act or acts occurred in Montgomery County, then Montgomery County is a proper venue to prosecute claims against Dr. Casals. Ala. Code § 6-5-551. Even if Dr. Casals ultimately showed that Montgomery County is not the proper venue because he treated Essie Mae Hendrix in another Alabama county, the appropriate relief would not be a dismissal but would be a transfer to the appropriate Alabama county.

7. As to the second asserted ground, in the complaint, there is no declaration as to when Dr. Casals prescribed Vioxx to and/or gave samples of Vioxx to Essie Mae Hendrix or as to when Essie Mae Hendrix died. Those dates cannot be ascertained from factual allegations contained in the complaint.

Therefore, pursuant to Rule 12(b)(6) of the Alabama Rules of Civil Procedure, it is not possible to find that a viable statute-of-limitations defense appears clearly on the face of the complaint. Jones v. Alfa Mut. Ins. Co., 875 So. 2d 1189, 1193 (Ala. 2003). Moreover, while unnecessary, Isaac Hendrix would inform this Court that Essie Mae Hendrix died on March 3, 2004. Because this action was commenced within two years of her death, the claims against Dr. Casals were timely brought. Hall v. Chi, 782 So. 2d 218 (Ala. 2000).

      8.    As to the third asserted ground, in the complaint, Isaac Hendrix asserted (1) that Dr. Casals negligently prescribed Vioxx to and/or gave samples of Vioxx to Essie Mae Hendrix and (2) that Dr. Casals negligently failed to obtain her informed consent to a course of treatment involving the ingestion of Vioxx. If Isaac Hendrix ultimately proves the factual allegations in the complaint, he would be entitled to recover monetary damages from Dr. Casals. Stewart v. Bay Minette Infirmary, 501 So. 2d 441 (Ala. 1986)(breaching standard of care in prescribing medications); Fain v. Smith, 479 So. 2d 1150 (Ala. 1985)(failure to get patient's informed consent). Therefore, a viable cause of action is asserted against Dr. Casals, and there is no basis for granting a Rule 12(b)(6)-based dismissal for failing to state a claim upon which relief can be granted.

9. Based on Dr. Casals' motion to dismiss, there is no likelihood that a state court judge would grant a dismissal. At best, Dr. Casals might be able to establish that he is entitled to a transfer of venue to another Alabama Circuit Court.

## Notice of Removal

10. On or about March 22, 2006, Merck filed a Notice of Removal.

11. Merck asserted a single source of federal subject-matter jurisdiction, namely diversity-of-citizenship jurisdiction. Notice of Removal ¶ 4.

12. Merck contended that, as to the issues of removal jurisdiction and subject-matter jurisdiction, Dr. Casals can be ignored because he has been fraudulently joined as a party-defendant. Notice of Removal ¶¶ 9-20.

## General Legal Principles

13. Federal courts are courts of limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (1994).

14. Removal statutes must be strictly construed because Congressional intent in enacting removal legislation was to restrict removal jurisdiction. Shamrock Oil & Gas Corp. v. Streets, 313 U.S. 100, 108, 61 S. Ct. 868, 85 L. Ed.

2d 1214 (1921); Lane v. Champion Internat'l Corp., 827 F. Supp. 701, 705 (S.D. Ala. 1993).

15.     Because federal removal jurisdiction is very limited, the remanding of a removed case is favored where the existence of federal subject-matter jurisdiction is not absolutely clear. Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (1994). "A presumption in favor of remand is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in its own courts." Klempner v. Northwestern Mut. Ins. Co., 196 F. Supp. 2d 1223, 1237 (S.D. Fla. 2001)(citations omitted).

16.     The removing party bears the burden of demonstrating the existence of federal removal jurisdiction. Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 42 S. Ct. 35, 660 L. Ed. 2d 144 (1921); Leonard v. Enterprise Rent a Car, 279 F.3d 967, 972 (11th Cir. 2002). The removing party has the burden of proving any asserted fraudulent joinder. Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997). A claim of fraudulent joinder must be supported by clear and convincing evidence. Parks v. New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962), cert. denied, 376 U.S. 949, 84 S. Ct. 964, 11 L. Ed. 2d 969 (1964).

17.     In determining whether a colorable claim is asserted against a non-diverse defendant, the court must "evaluate factual allegations in the light most

favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." Pacheo de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998). "[I]f there is even a possibility that [a] state court would find that the complaint states a cause of action against any ... resident defendant, [a court must] find that joinder was proper and remand [the] case to state court." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997).

### Dr. Casals Is Not Fraudulently Joined

18.  Merck proffered no evidence that, like Essie Mae Hendrix was at the time of her death, Dr. Casals is not an Alabama resident. In his motion to dismiss filed prior to the removal, Dr. Casals gave no indication that he was not an Alabama resident.

19.  In its notice, Merck wrote: "Specifically, in light of the factual allegations in the Complaint, 'there is no possibility that the plaintiff[s] can prove a cause of action against the resident (non-diverse)' defendant. Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998)." Notice of Removal ¶ 10. Yet, Merck fails to demonstrate that, under Alabama substantive law, there is no possibility that Isaac Hendrix can recover monetary damages from Dr. Calas if the factual allegations in Count VIII of the Complaint are proven.

20. Merck's arguments are predicated on its assertion that any "conclusionary allegations of the physician's knowledge are contradicted by specific allegations that the manufacturer defendant concealed information from the general public, including health care providers." Notice of Removal ¶ 12.

21. Isaac Hendrix would first remind this Court that, in Count VIII, the designated medical-negligence count, he alleged (1) that, with actual and/or constructive knowledge of the risks and dangers associated with the use of Vioxx, Dr. Casals wrongfully prescribed Vioxx to and/or gave samples of Vioxx to Essie Mae Hendrix and/or (2) that Dr. Casals negligently failed to inform Essie Mae Hendrix of the cardiovasular risks associated with ingesting Vioxx. Complaint ¶ 54.

22. The latter allegation presupposes that Merck fulfilled its obligation under the learned-intermediary doctrine to adequately inform treating physicians of the risks associated with Vioxx. By this latter allegation, Isaac Hendrix seeks to hold Dr. Casals legally accountable under a lack-of-informed-consent theory. Under Alabama substantive law, a physician must inform a patient of the significant perils associated with a course of treatment. Otwell v. Bryant, 497 So. 2d 111, 117-18 (Ala. 1986). Isaac Hendrix alleges that cardiovascular risks are significant perils associated with Vioxx that Essie Mae Hendrix should have informed of in order that she could make an informed decision as to whether to

accept Dr. Casals' recommendation to take Vioxx. In its notice, Merck never sought to demonstrate that an Alabama state court would grant a Rule 12(b)(6)-based dismissal as to this lack-of-informed-consent theory asserted against Dr. Calas.

23. As to the first allegation in the medical-negligence count, Merck suggests that Isaac Hendrix cannot alternatively argue (1) that Merck concealed material information from treating physicians and (2) that Dr. Casals actually or constructively knew sufficient information about Vioxx to appreciate that Vioxx should not have been prescribed or given to Essie Mae Hendrix. While citing several opinions, Merck misrepresented critical information regarding some of the cited opinions and totally ignored numerous opinions that seriously undermine its suggestion.

24. In <u>In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation</u>, 220 F. Supp. 2d 414 (E.D. Pa. 2002), an opinion cited by Merck, in a single lawsuit, there were fifty named plaintiffs, and three physicians, Drs. Ditta, Yount, and Hersh, were named as defendants. Forty-eight of the plaintiffs were never treated by or had any contact with these three physicians. No plaintiff was treated by Dr. Hersh. Plaintiff Crystal Gatlin alleged that she had been treated by Dr. Ditta, and Plaintiff Verna Brown alleged that she had been treated by Dr. Yount. The trial court found that Dr. Hersh had been

fraudulently joined as to all plaintiffs, that Dr. Ditta had been fraudulently joined except as to Gatlin, and that Dr. Yount had been fraudulently joined except as to Brown. 220 F. Supp. 2d at 422. Then, the trial court granted a remand as to Gatlin and Brown. Because Galtin an Brown had been prescribed the subject diet drugs by a named defendant physician, as to them, there was no demonstration of fraudulent joinder. See also Greene v. Wyeth, 344 F. Supp. 2d 674 (D. Nev. 2004), wherein the court severed out the two plaintiffs who were treated by the physician named as a party-defendant and remanded their claims back to state court. In Diet Drugs and Greene, the courts found that the plaintiffs could simultaneously prosecute claims against manufacturer-defendants and treating physicians in scenarios such as the present matter.

25.    Merck relies heavily on In re Rezulin Prods. Liab. Litig., 133 F. Supp. 2d 272 (S.D.N.Y. 2001), and In re Bacyol Prods. Litig., 2003 WL 21223842 (D. Minn. May 27, 2003)(often referred to as "Spier"). In Crone v. Pfizer, Inc., 2004 WL 1946386 (N.D. Cal. Sep. 1, 2004), the court specifically addressed Pfizer's fraudulent-joinder argument predicated on those two opinions:

> The Pfizer Defendants suggest that Plaintiffs' Complaint is internally inconsistent because it alleges that the Pfizer Defendants failed to warn prescribing physicians of the risks but also alleges that the physician failed to warn his patient of the risks. The Pfizer Defendants argue that by alleging the former, Plaintiffs refute the viability of the latter ....

In both <u>Baycol</u> and <u>Rezulin</u>, the plaintiffs brought suit against pharmaceutical manufacturers and their prescribing physicians for injuries they sustained that they alleged were caused by the ingestion of a prescribed medication. The physicians in each case was a non-diverse defendant. In each case, the manufacturing defendants removed the action to federal court arguing that because the physician was fraudulently joined, the federal court had diversity jurisdiction. In each case, the district court agreed and denied the plaintiff's motion for remand, finding that the plaintiff had failed to establish a viable claim against the physician. Both courts found that the plaintiffs' claims that the pharmaceutical manufacturers had concealed material facts about the safety of the drugs from prescribing physicians refutes any allegation that the prescribing physicians knew or should have known about the risks.

The Court is not persuaded to find that same result in the case at bar. In both <u>Baycol</u> and <u>Rezulin</u>, the district courts held that internally inconsistent pleadings in pharmaceutical products liability cases where the manufacturer and the prescribing physician are named defendants support a finding of fraudulent joinder. However, in nearly identical circumstances, another court came to the opposite conclusion. In <u>Ritchie v. Warner-Lambert Co.</u>, 2001 U.S. Dist. LEXIS 6783, at * 4-5 (E.D. La. 2001)[also found at 2001 WL 527501], the district court rejected the drug manufacturing defendants' argument that a physician cannot be liable for failure to warn where the complaint specifically alleges that the manufacturers represented to the physician that the drug was safe because "when a plaintiff sues multiple defendants, the allegations against the multiple defendants are often inconsistent." <u>See</u> <u>also</u> <u>Barragon v. Warner-Lambert Co.</u>, 216 F. Supp. 2d 627 (W.D. Tex. 2002).

The difference between <u>Ritchie</u> and <u>Barragon</u> on the one hand, and <u>Baycol</u> and <u>Rezulin</u> on the other,

11

seems to lie in the viability of the claim alleged against the non-diverse physician, not in the consistency or inconsistency of the pleadings across multiple defendants. For example, in <u>Baycol</u>, the court found that the plaintiff's complaint did not include any factual assertions to support the conclusory allegations that the physician knew or should have known of the risks. Similarly, in <u>Rezulin</u>, the court found that the plaintiffs "do not come close to alleging that Oblena proximately caused their injuries or that he knew or should have known of the risks of [the drug]." <u>Id</u>. at 295. "That Mr. Oblena is even a physician is impossible to determine from the face of the complaint .... In fact, it is impossible to determine anything about Oblena, because he is not mentioned in the complaint, other than in the introduction. He is simply included in all of the allegations against 'defendants' in general." <u>Id</u>. at 294-95. In <u>Ritchie</u>, however, the court found that the plaintiff's claim that the physician failed to follow the drug's package insert instructions and warnings, failed to monitor and evaluate the patient for adverse effects of the drug, and failure to warn the patient of the risks were sufficient to establish a viable cause of action against the non-diverse defendant. The district court remanded the action to state court finding that the non-diverse physician had not been fraudulently joined and that removal was improper.

  The Court finds that here, the cause of action that the Plaintiffs allege against [Dr.] Jennings most closely resembles the one alleged against the prescribing physician in <u>Ritchie</u>. Unlike the <u>Baycol</u> and <u>Rezulin</u> plaintiffs, Plaintiffs in the case at bar have asserted in their Complaint facts that support the allegation that Dr. Jennings knew or should have known that Neurontin was risky. As described above, Plaintiffs claim that Dr. Jennings owed the decedent specific duties to investigate any risks associated with ingesting Neurontin, to warn the decedent of any risks, to follow the instructions on the package insert, and to prescribe proper dosages and

12

> offer safer alternatives, and that Dr. Jennings breached those duties. ... The cause of action against the prescribing physician in the Baycol case was far more general and conclusory than the one at issue in this case. Plaintiffs here have also done far more than the plaintiff in Rezulin, who apparently did nothing more than name the prescribing physician as a defendant. The Court finds that as in Ritchie, Plaintiffs have alleged a viable cause of action for medical negligence against the prescribing physician.

2004 WL 1946386 at * 3-5.

26. With regard to the medical-negligence cause of action asserted against Dr. Casals, the present complaint is far more akin to the complaints in Crone, Ritchie, and Barragan than the complaints in Baycol and Rezulin. Dr. Casals is specifically identified as Essie Mae Hendrix's treating physician who prescribed Vioxx to her and/or gave her samples of Vioxx to ingest. Moreover, a separate court is devoted to Dr. Calas as a treating physician and asserting a medical-negligence cause of action against him. Merck does not even suggest that an Alabama state court judge would grant a Rule 12(b)(6)-based dismissal of Count VIII.

27. No procedural rule bars Isaac Hendrix from contending that, despite the alleged misconduct of Merck, treating physicians possessed sufficient information to appreciate that prescribing Vioxx was contraindicated for Essie Mae Hendrix. In the opinions discussed herein, other courts found no such procedural rule and held that a patient, or, in the present matter, a patient's personal

representative, may simultaneously prosecute products-liability claims against a drug company and a medical-negligence claim against the prescribing physician. In those instances where a court determined that the treating physician had been fraudulently joined, the complaint itself provided significant indications that the plaintiff was not serious about prosecuting any claim against the treating physician, for example, mentioning the treating physician only once in the complaint or not asserting a distinct medical-negligence claim. In the present matter, Merck pointed out no such significant indications but, instead, argued only that it is inconsistent to allege that Merck "deceived" the treating physician and that the treating physician knew, actually or constructively, of the risks or dangers associated with Vioxx. Merck's sole argument is inadequate to meet its heavy burden of demonstrating that Dr. Calas was fraudulently joined.

28.    In addition, under Alabama procedural practice, "[a]ll persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrence and if any question of law or fact common to all defendants will arise in the action." Ala. R. Civ. P. 20(a). Isaac Hendrix alleges that Essie Mae Hendrix was injured due to ingesting Vioxx; therefore, the claims asserted against Merck and Dr. Calas arise out of the same occurrence, the supplying of Vioxx. Unquestionably, there are

14

questions of law or fact common to all defendants. For example, a common factual question is whether the ingestion of Vioxx was the cause-in-fact of any medical problem attributed to ingesting Vioxx. Isaac Hendrix seeks to hold all named defendants jointly, severally, or alternatively liable for any harm caused by ingesting Vioxx. Pursuant to Rule 20(a), Isaac Hendrix exercised his right to permissibly join his claims against Merck and Dr. Calas in a single lawsuit.

29. Moreover, because Vioxx is a prescription drug, the learned-intermediary doctrine applies. Isaac Hendrix reasonably anticipates that, as part of its defense, Merck will seek to prove that it adequately informed doctors of the risks associated with Vioxx and will argue that, if Vioxx was contraindicated for a particular patient, then the doctor was medically negligent in prescribing or giving Vioxx to that patient. The medical-negligence cause of action asserted in the present complaint is totally consistent with Merck's expected defense. The medical-negligence claim is based on an alternative theory as to the proximate cause of Essie Mae Hendrix's death attributable to the ingestion of Vioxx. The medical-negligence claim is expressly predicated on the defendant doctor having actual or constructive knowledge of the risks that, elsewhere, in the complaint, the plaintiff alleges Merck tried to conceal, and having breached the standard of care in prescribing or giving a patient Vioxx while possessing such knowledge. In Ohler v. Purdue Pharma, L.P., 2002 WL 88945 (E.D. La. Jan. 22, 2002), the court

granted a remand where Ohler sued both the drug manufacturer and the prescribing physician and where it was apparent that the drug manufacturer would assert a learned-intermediary defense.

30. In the context of removal jurisdiction, a federal court should never ascribe an improper motive to a plaintiff who chooses to exercise the right to permissibly join viable claims against a non-diverse defendant and a diverse defendant. A federal court should never speculate that such a plaintiff is not truly interested in prosecuting an otherwise viable cause of action against the non-diverse defendant or that such a plaintiff will abandon the claims against the non-diverse defendant once the diverse defendant is barred from securing a removal to federal court. See <u>Colvin v. American General Life & Accident Ins. Co.</u>, wherein the court wrote:

> This Circuit's fraudulent joinder jurisprudence establishes that the court is contrained from conducting such an inquiry [into the plaintiff's actually intent to seek a judgment against an individual non-diverse defendant]. The fraudulent joinder test as currently extant in the Eleventh Circuit – whether a cause of action exists against the resident defendant – obviates the need to look to the actual motive of the plaintiff or her attorney. ... Whether this court "suspects," "assumes," or "knows" that plaintiff does not "actually" seek to recover against [the individual non-diverse defendant] is irrelevant to the jurisdictional inquiry under controlling authority.

2001 WL 391513 at * 5 (N.D. Ala. Apr. 13, 2001)(citations omitted). <u>See</u> <u>also</u> <u>Wright v. Metropolitan Life Ins. Co.</u>, 74 F.2d 1150, 1152 (M.D. Ala. 1999); <u>Samples v. Conoco, Inc.</u>, 165 F. Supp. 2d 1303, 1319-20 (N.D. Fla. 2001).

31.     Merck's sole argument is inadequate to meet its heavy burden of demonstrating that Dr. Calas was fraudulently joined. A remand is appropriate and should be granted.

## Concluding Remarks

32.     Removal jurisdiction is very restrictive. Therefore, remand is favored where the existence of federal subject-matter jurisdiction is not absolutely clear. With regard to fraudulent joinder, a very heavy burden is imposed on the removing party to prove by clear and convincing evidence that a state court could not possibly find that the complaint states a cause of action against a named non-diverse defendant. There is a strong bias in favor of remand.

33.     In the present matter, Dr. Calas treated Essie Mae Hendrix and prescribed her Vioxx. In Count VIII, Isaac Hendrix asserted a viable medical-negligence cause of action against Dr. Calas. Under Alabama substantive law, colorable claims have been asserted against Dr. Calas, whom Merch does not dispute is an Alabama resident, like Essie Mae Hendrix was at the time of her death. Other courts, applying the same basic principles that this Court must apply,

have granted motions to remand in similar situations. The governing legal principles mandate a remand.

WHEREFORE, for the reasons stated herein, Isaac Hendrix again asks this Court to enter an order remanding this matter back to the Circuit Court of Montgomery County, Alabama.

    Respectfully submitted,

    /s/ Tom Dutton
    Tom Dutton, Esq. (ASB-2059-U50T)
    PITTMAN, HOOKS, DUTTON, KIRBY & HELLUMS, P.C.
    Suite 1100, Park Place Tower
    2001 Park Place North
    Birmingham, Alabama 35203
    (205)322-8880
    (205)328-2711 (fax)
    Email: phdkh-efiling@pittmanhooks.com

    Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of March, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys of records:

Philip H. Butler, Esq.
William C. McGowan, Esq.
George R. Parker, Esq.
BRADLEY, ARANT, ROSE & WHITE, LLP.
The Alabama Center of Commerce
401 Adams Avenue, Ste. 780
Montgomery, Alabama 36104

Fred M. Haston, III, Esq.
Anne Marie Seibel, Esq.
F. Wendell Allen, Esq.
Bradley, Arant, Rose & White, LLP.
One Federal Place
1819 5th Avenue North
Birmingham, Alabama 35203-2119

Randal H. Sellers, Esq.
Starnes & Atchison, LLP.
Seventh Floor, 100 Brookwood Place
P. O. Box 598512
Birmingham, Alabama 35259-8512

/s/ Tom Dutton
Of Counsel