**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **ISAAC HENDRIX, SR., as Personal Representative of the Estate of Essie Mae Hendrix, deceased,** | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NUMBER:** |
| **v.** | ) | **2:06-cv-265-MHT** |
| **MERCK & CO., INC.; LEON CASALS, M.D.; and A-R,** | ) | |
| **Defendants.** | ) | |

**DEFENDANT MERCK & CO., INC.'S**
**<u>OPPOSITION TO REMAND</u>**

Plaintiff has sought to evade federal jurisdiction by joining his product liability claims against Merck, which meet all of the requirements for federal diversity jurisdiction, with claims against in-state physician Dr. Leon Casals. Plaintiff also asks this Court to expend its judicial resources to address issues that are due to be decided by the Vioxx® MDL court. As set forth below and in Merck's prior motion to stay, the Court should defer consideration of plaintiff's motion to remand pending MDL transfer. However, if the Court chooses to consider plaintiff's motion rather than staying the case, the Court should deny the motion because plaintiff's effort to avoid federal jurisdiction is barred by the doctrine of fraudulent joinder.

**<u>BACKGROUND</u>**

Plaintiff Isaac Hendrix, Sr. as Personal Representative of the Estate of Essie Mae Hendrix, deceased, filed this action in the Circuit Court of Montgomery County, Alabama. In

his Complaint, plaintiff Hendrix alleges that his wife died as a result of ingestion of the prescription medicine Vioxx. The main thrust of plaintiff's Complaint is that defendant Merck & Co., Inc. ("Merck") misrepresented the risks associated with Vioxx and concealed the medication's risks from the healthcare community and from patients. The Complaint includes "Factual Allegations" regarding Merck's knowledge of the "serious cardiovascular risks" supposedly associated with Vioxx, and the alleged misrepresentation and concealment of those supposed risks. Compl. ¶¶ 7-12. Plaintiff asserts seven separate counts against Merck in his Complaint. Compl., ¶¶ 13-51.

In addition to his claims against Merck, plaintiff has included a count for medical malpractice against Leon Casals, M.D., ("Casals"). Compl. ¶¶ 52-54. No other claims are asserted against Defendant Casals.

On March 22, 2006, Merck timely removed this action to this Court based on federal diversity jurisdiction. On March 31, 2006, Dr. Casals filed a Motion to Dismiss pursuant to Rule 54(6). In its notice of removal, Merck demonstrated that all of the requirements for diversity jurisdiction are present, including complete diversity of citizenship between the plaintiff, alleged to be an Alabama citizen, and Merck. Notice of Removal ¶¶ 7. As set forth in the notice of removal, the Physician Defendant has been fraudulently joined as defendant to this action, and his citizenship therefore should be ignored for the purposes of determining federal diversity jurisdiction. Notice of Removal ¶¶ 10-20.

Along with its notice of removal, Merck filed a motion to stay all proceedings in this action pending its likely transfer to *In re VIOXX Products Liability Litigation* (MDL-1657), the MDL proceeding that has been established in the Eastern District of Louisiana to coordinate pretrial proceedings in all products liability cases concerning Vioxx. The MDL Panel has been

notified of this potential "tag-along" action, and Merck expects a conditional transfer order listing this case to be issued shortly.

Plaintiff has filed a motion to remand this action to state court. As set forth in Merck's reply to plaintiff's memorandum brief in response to Merck's motion to stay all proceedings, filed contemporaneously herewith, Merck respectfully submits that the Court should defer ruling on the motion to remand pending the likely transfer of this action to the Eastern District of Louisiana and should allow Judge Fallon, the MDL judge, to decide the motion along with other similar motions already before him. In the alternative, should the Court elect to rule on the motion to remand, the Court should deny the motion for the reasons discussed below.

## ARGUMENT

### I. PLAINTIFF'S MOTION TO REMAND SHOULD BE RESOLVED AFTER THIS CASE IS TRANSFERRED TO THE MDL COURT.

Federal courts across the country, including Judge Fallon who is presiding over the Vioxx MDL proceeding, have recognized that the best way to ensure that MDL proceedings can achieve their statutory goal of efficient, coordinated proceedings is by staying litigation pending transfer to the MDL court, including the consideration of remand motions. This is particularly true where, as here, the issues raised by plaintiff's motion to remand are similar to those raised in other cases that already have been transferred to the same MDL proceeding. The issues in plaintiff's motion to remand are nearly identical to those raised by the same plaintiff's counsel in *Mitchell v. Merck & Co., Inc.* (see Exh. M to Merck's Reply to Plaintiff's Opposition to Motion to Stay) and *Wilkes v. Merck & Co. Inc, et al.* (see Exh. N to Merck's Reply to Plaintiff's Opposition to Motion to Stay), both of which included physician defendants and were recently transferred from the United States District Court for the Northern District of Alabama to the

Vioxx MDL proceeding. There are now dozens of such cases in the MDL proceeding with pending remand motions, and more are in the pipeline for MDL transfer.

Courts around the country have now stayed approximately 1,800 Vioxx-related cases. In nearly 300 of those cases, plaintiffs sought remand, including a number that involve physician defendants. These courts include ones in Alabama that recently stayed Vioxx cases with motions to remand pending, over the objections of plaintiff's counsel. *Jones v. Merck & Co., Inc.*, No. 2:05-CV-427-RDP (N.D. Ala. Apr. 25, 2005) and *Wilkes v. Merck & Co., Inc.*, No. 2:05-RRA-1214-S (N.D. Ala. June 30, 2005) (collectively attached as Exh. A hereto). The Vioxx MDL Court, therefore, will address in the near future the same issues raised in plaintiff's motion to remand. For the sake of consistency and judicial economy, this Court should defer consideration of plaintiff's motion to remand and grant Merck's pending motion to stay so that the MDL Court can decide these jurisdictional matters in a coordinated manner.

In short, because plaintiff's motion to remand raises the same issues as a number of remand motions in other Vioxx cases already in, or headed to, the MDL proceeding, the pendency of the motion merely confirms the appropriateness of staying this case so that the MDL court can decide jurisdictional issues in a coordinated manner. In further support of this argument, Merck refers the Court to its arguments in its motion to stay and its reply to plaintiff's opposition thereto.

## II. THE MOTION TO REMAND SHOULD BE DENIED BECAUSE THE NON-DIVERSE DEFENDANT HAS BEEN FRAUDULENTLY JOINED.

Alternatively, plaintiff's motion to remand should be denied because this case was properly removed to federal court based upon federal diversity jurisdiction. *See* 28 U.S.C. §§ 1332, 1441, 1446. It is undisputed that there is complete diversity of citizenship between the plaintiff and Merck. *See* Notice of Removal ¶¶ 5-8. It also is undisputed that the amount in

controversy is met, *id.* ¶¶ 21-26, and that the notice of removal was timely filed. *Id.* ¶ 27. Plaintiff's motion to remand challenges only the diversity of citizenship of Dr. Casals. As set forth below, and in the Notice of Removal, Dr. Casals has been fraudulently joined, and thus his citizenship may not be considered for diversity purposes.

Dr. Casals' citizenship should be disregarded for removal purposes because there is no "reasonable basis for predicting" that plaintiff could prevail on his claim against this non-diverse defendant. *Crowe v. Coleman*, 113 F.3d 1536, 1542 (11th Cir. 1997). As other courts have recognized in similar circumstances (*See* cases discussed in detail below and in Merck's Notice of Removal ¶¶ 17-18), plaintiffs cannot sustain claims against a pharmaceutical manufacturer for allegedly withholding information from doctors while at the same time suing a physician in an effort to evade federal jurisdiction. Accordingly, Dr. Casals has been fraudulently joined, and his citizenship must be disregarded for purposes of determining jurisdiction.

Plaintiff's claim against Dr. Casals is premised on his alleged withholding of information regarding the risks of Vioxx. This claim cannot succeed because the information Dr. Casals is alleged to have withheld is the very same information that Merck is alleged to have withheld from physicians and patients. Numerous courts have recognized that where a plaintiff alleges that pharmaceutical manufacturers, marketers, or distributors misrepresented or concealed material facts from prescribing physicians, the plaintiff's allegations that the doctor caused plaintiff's injuries or should have known of the risks of the medicine are insufficient to provide a basis for recovery against the non-diverse physician defendant. *See* Notice of Removal ¶¶ 17-18 (and cases cited therein).

In this case, plaintiff makes numerous allegations about the alleged conduct of Merck that allegedly concealed pertinent information about Vioxx from doctors and patients. For example,

plaintiff alleges that Merck affirmatively concealed cardiovascular risks associated with Vioxx, made false representations that Vioxx was safe, failed to warn of the dangers of Vioxx, and fraudulently suppressed and concealed his knowledge about the safety of Vioxx. *See* Notice of Removal ¶ 19. Plaintiff alleges that Merck misrepresented facts to, and withheld information regarding the risks of Vioxx from, the healthcare industry. *Id.* At the same time, plaintiff asserts that Dr. Casals "negligently, wantonly and/or wrongfully prescribed and/or provided samples of the brand-name prescription drugs Vioxx to the Plaintiff with actual and/or constructive knowledge of the risks and dangers associated with the use of Vioxx." Compl. ¶ 54.[1] Plaintiff's conclusory allegations to the contrary cannot repair this elemental flaw in the Complaint. *See* *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) ("conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal").[2]

Faced with similar allegations against a non-diverse physician defendant, the Baycol MDL Court explained that where "the main thrust" of the complaint is that the pharmaceutical defendants "misrepresented [a prescription medication's] risks and failed to adequately warn of such risks," mere conclusory allegations that a physician "'knew or should have known'" of

---

[1] Plaintiff cannot get around this flaw by pleading his claim against Dr. Casals in the alternative. *See* Compl. ¶ 54 (Casals was negligent "if Merck informed Casals of those risks"). No cause of action can be stated against Dr. Casals if Merck *did* misrepresent the risks of Vioxx, and no cause of action can be stated against Merck if it *did not* misrepresent the risks. These allegations are fundamentally at odds and cannot co-exist in the same complaint. and they make plain that any claim against Dr. Casals cannot be joined with the claims against Merck.

[2] Moreover, plaintiff's claims against Dr. Casals are due to be dismissed under the Alabama Medical Liability Act of 1987, Ala. Code § 6-5-540, *et seq.* Under Alabama law, a complaint asserting a medical negligence claim must include "a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts. . . . Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted." Ala. Code § 6-5-551. Plaintiff's Complaint fails to include a "detailed specification and factual description" of any alleged wrongful acts or omissions by the Physician Defendant. Under this statute, plaintiff's claims against the physician defendant are not viable as pleaded.

those risks will not defeat a finding of fraudulent joinder. *Spier v. Bayer Corp*. (*In re Baycol Products Litigation*), 2003 WL 21223842, at *2 (D. Minn. May 27, 2003) ("*Baycol*"). As a result, the court concluded that allegations that the non-diverse physician negligently prescribed Baycol were inadequate to defeat removal. *Id.* at *2.

Numerous courts around the country have employed this same reasoning to conclude that physicians or pharmacies have been fraudulently joined to defeat diversity jurisdiction. For example, in *In re Rezulin Products Liability Litigation*, 133 F. Supp. 2d 272 (S.D.N.Y. 2001) ("*Rezulin*"), the court found that an Alabama resident physician was fraudulently joined in a products liability action against a drug manufacturer, where the plaintiff's specific allegations that the manufacturer misrepresented and concealed material facts about the safety and efficacy of its drug refuted the assumption that the physician had knowledge of the drug's harmful effects. *Id.* at 295; *see also Omobude v. Merck & Co.*, No. 3:03CV528LN, slip op. at 4 (S.D. Miss. Oct. 3, 2003) (Exh. F to Notice of Removal) (physician fraudulently joined where plaintiff alleged that "Merck withheld and concealed and misrepresented the true facts regarding VIOXX®; and yet, without alleging any factual basis for the charge, plaintiff conclude[d] that [physician] 'knew or should have known' the truth about Vioxx"); *Baisden v. Bayer*, 275 F. Supp. 2d 759, 763 (S.D. W. Va. 2003) (physician fraudulently joined where the "gravamen of the malpractice case against [physician] is his failure to know what allegedly was deliberately hidden" by drug manufacturer); *In re Rezulin Prods. Liab. Litig*., 2002 WL 31852826, *2 (S.D.N.Y. Dec. 18, 2002) (non-diverse physician defendant fraudulently joined where "main tenor of plaintiff's complaint is that [drug] was an unsafe drug and that the manufacturers concealed its risks from the public, physicians, and others").

Plaintiff's attempt to argue in his motion to remand that the claims against Dr. Casals are sufficient based upon *new* allegations is unavailing. Specifically, plaintiff belatedly attempted to bolster his claims against Dr. Casals by making specific factual arguments – nowhere reflected in the Complaint – under which he contends that Dr. Casals might be liable.[3] But the law is clear that removal is evaluated based upon plaintiff's pleadings at the time of removal, not based upon counsel's arguments made well after a case has been removed to federal court. *See Pullman v. Jenkins*, 305 U.S. 534, 537 (1939); *accord Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302, 1306 n.1 (11th Cir. 2001) ("[W]e consider only the original complaint . . . because the question of diversity subject matter jurisdiction is determined on the plaintiff's pleadings at the time of removal"); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989) (determination "whether there is no possibility the plaintiff can establish any cause of action against the resident defendant . . . should be made based upon the plaintiff's pleadings at the time of removal").

Plaintiff's remand arguments are rendered further unsound by his failure to rebut the substantial authority cited in Merck's notice of removal. Instead, plaintiff challenges only Merck's reliance on *Rezulin* and *Baycol*. And even this attempt fails. Plaintiff attempts to distinguish this case from *Baycol* by arguing that he "specifically identified" Dr. Casals, Hendrix's treating physician who prescribed Vioxx to her and or gave her samples of Vioxx to injest" and that they devoted a separate medical negligence claim against the Physician

[3] Plaintiff now implies that the Complaint alleges that the Dr. Casals "possessed sufficient information to appreciate that prescribing Vioxx was contraindicated for Essie Mae Hendrix." Motion to Remand ¶ 27. In so characterizing his claim, plaintiff embellishes on the sparse allegations that actually comprise the malpractice count. In fact, nowhere in the Complaint does plaintiff allege that VIOXX® were contraindicated for decedent Hendrix. Nor does plaintiff's Complaint allege how – or even that – Dr. Casals came to possess any knowledge of the alleged risks of Vioxx; rather, plaintiff includes only the conclusory statement that Dr. Casals had "actual and/or constructive knowledge of the risks and dangers associated with the use of Vioxx." Compl. ¶ 54.

Defendant that is inapplicable Merck. Motion to Remand ¶ 26. However, plaintiff's effort to distinguish this case from *Baycol* fails because the *Baycol* plaintiff did exactly the same thing.

In *Baycol*, plaintiff Spier "asserted claims against the pharmaceutical manufacturers, as well as her personal physician, Dr. Stone." *Baycol*, 2003 WL 21223842 at *1. Her claim against Dr. Stone was one for negligence. Specifically, she alleged that Dr. Stone "knew, or should have known, that Baycol was a dangerously defective drug which posed unacceptable risks of serious injury which were unknown and unknowable by Plaintiff." . . . She also alleges that Dr. Stone negligently failed to warn Plaintiff of the risks associated with Baycol and that such negligence was the cause of her injuries. . . . She further alleges that Dr. Stone could have used a safer statin, but instead prescribed Baycol. *Id.* at *2 (citations to complaint omitted). The court, "[r]eading the Complaint as a whole," found that "the main thrust of this action is that the [pharmaceutical] Defendants misrepresented Baycol's risks and failed to adequately warn of such risks. Plaintiff has not included any factual assertions in her Complaint to support the conclusory allegations that Dr. Stone 'knew or should have known' of Baycol's risks. Her conclusory allegations, however, will not defeat a finding of fraudulent joinder." *Id.* Therefore, the court denied the plaintiff's motion to remand. *Id.* Plaintiff Spier's specific identification of Dr. Stone as her treating physician and inclusion of a separate medical negligence count were not enough to defeat fraudulent joinder.

Despite the marked similarity between the instant case and *Baycol*, plaintiff asserts – incorrectly – that his case is "far more akin" to *Crone v. Pfizer, Inc.*, 2004 WL 1946386 (N.D. Cal. Sept. 1, 2004), in which the court distinguished *Rezulin* and *Baycol* and held that a physician was not fraudulently joined as a defendant in a products liability action against pharmaceutical manufacturer Pfizer, and two other decisions cited in *Crone* that reached similar results, *Ritchie*

*v. Warner-Lambert Co.*, 2001 U.S. Dist. LEXIS 6783 (E.D. La. 2001), and *Barragon v. Warner-Lambert Co.*, 216 F. Supp. 2d 627 (W.D. Tex. 2002). Motion to Remand ¶ 22. The instant case is easily distinguishable from *Crone*, *Ritchie*, and *Barragon*.

In *Crone*, which involved the prescription drug Neurontin, the plaintiff alleged that the physician defendant breached "specific duties" "to stay informed as to the risks associated with taking Neurontin, to inform patients of the risks associated with Neurontin, to carefully follow the package insert instructions, recommendations, and warnings for taking Neurontin, and to prescribe proper dosages and inform patients of safer available alternative drugs." *Crone*, 2004 WL 1946386 at *3, *5. The *Crone* plaintiffs further alleged that the physician "prescribed a higher-than-approved dosage of the drug for the decedent and that he prescribed it for an off-label condition." *Id*. at *5. Based on these *specific* allegations, the court held that the plaintiff had alleged a viable cause of action for medical negligence against the physician and that the physician was not fraudulently joined. *Id*.

Similarly, in *Ritchie*, which involved the prescription drug Rezulin, the petitioner alleged in his complaint that his treating physician failed "to carefully follow Rezulin's package insert instructions, recommendations and warnings"; failed "to fully monitor and evaluate petitioner['s] heart and/or liver function and/or other adverse medical effects"; failed "to accurately diagnose petitioner's heart and/or liver and/or other adverse medical effects"; failed "to recognize that Rezulin was a cause of petitioner's heart and/or liver problems and/or other adverse medical effects"; and failed "to warn or adequately inform petitioner of the potential harm associated with the use of Rezulin, and . . . to protect petitioner from that harm." *Ritchie*, 2001 WL 527501 at *1. The court held that "with these allegations, Plaintiff has alleged with particularity a viable

cause of action against his treating physician" who, the Court found, was not fraudulently joined. *Id*.

In *Barragon*, another case involving Rezulin, the plaintiff alleged that his physician was negligent in failing to warn him of the risks linked to Rezulin, in failing to test and monitor his liver functions, and in continuing to prescribe Rezulin to him. *Barragon*, 216 F. Supp. 2d at 632. In addition, the plaintiff submitted evidence supporting her allegation that the physician knew or should have known about the risks linked to Rezulin, including two letters from the manufacturers and distributors of Rezulin that warned physicians about potential liver damage from taking Rezulin and advised them to test and monitor the liver function of their patients who were taking Rezulin. *Id*. The court concluded that the plaintiff had demonstrated a viable medical malpractice claim against the physician and that the physician was not fraudulently joined. *Id*. at 633.

The instant case is much more similar to *Baycol* than to *Crone*, *Ritchie*, or *Barragon*. Unlike the complaints in *Crone*, *Ritchie*, and *Barragon*, plaintiff's Complaint does not allege any specific failures on the part of the physician defendant. Rather, plaintiff's Complaint merely alleges that Dr. Casals "negligently, wantonly and/or wrongfully prescribed . . . Vioxx to the Plaintiff's decedent with actual and/or constructive knowledge of the risks and dangers associated with the use of Vioxx." Compl. ¶ 54. As in *Baycol*, plaintiff's Complaint here includes no factual assertions to support the conclusory allegation that Dr. Casals knew or should have known about the alleged dangers associated with Vioxx. To the contrary, all the factual assertions in his Complaint relate to Merck's alleged concealment of such dangers from patients and from healthcare providers such as the Physician Defendant.

Plaintiff also cites *In re Diet Drugs Products Liability Litigation*, 220 F. Supp. 2d 414 (E.D. Pa. 2002), and *Greene v. Wyeth*, 344 F. Supp. 2d 674 (D. Nev. 2004), for the proposition that plaintiff can simultaneously prosecute claims against pharmaceutical manufacturers and physicians. Motion to Remand ¶¶ 24. Merck does not assert that manufacturers and physicians can *never* be co-defendants in the same action; rather, Merck's position is that Dr. Casals is improperly joined in this action because the allegations in the Complaint render it impossible for plaintiff to state a claim against him. Different issues were involved in the cases plaintiff cites. For instance, the argument asserted by the removing defendants in *Greene* was that the claims against the physician defendants were time-barred, an argument that the court rejected. *Greene* is easily distinguishable because that issue is not before the Court in this motion to remand.

In short, this case is almost identical to *Baycol*, and the same result should be reached here. Plaintiff alleges that Dr. Casals failed to heed warnings that, according to plaintiff's own Complaint, Dr. Casals *never received*. Because there is simply no possibility that plaintiff can establish a cause of action against Dr. Casals under this fact pattern, Dr. Casals is fraudulently joined, and his citizenship must be ignored for purposes of determining diversity jurisdiction. For this reason, complete diversity exists in this case.

## III. THE NON-DIVERSE PHYSICIAN IS DISPENSABLE AND MAY BE SEVERED FROM THIS CASE.

Alternatively, this case should remain in federal court because Dr. Casals can and should be severed from this case. In accord with the Meridia MDL Court's decision in *Williams v. Knoll Pharmaceutical Co.*, No. 5:03-cv-8030, slip op. at 5-8 (N.D. Ohio July 11, 2003) (Exh. B hereto), *motion to reconsider denied* (N.D. Ohio Aug. 18, 2003) (Exh. C hereto), the claims against the physician defendant in this case should be severed pursuant to Rules 19 and 21 of the Rules of Civil Procedure.

In *Williams*, thirteen plaintiffs brought suit against diverse pharmaceutical company defendants while six of the plaintiffs also sued their six non-diverse Mississippi treating physicians. *See* Exh. B at 1-2. Defendants removed the case to federal court on the basis of diversity jurisdiction, alleging that the plaintiffs were egregiously misjoined and that the defendants were fraudulently joined. *See id.* at 5. The Meridia MDL Court did not reach those issues and instead denied plaintiffs' motion to remand by exercising its discretion to drop dispensable, non-diverse defendants. *See id.* at 6 ("'it is appropriate to drop a nondiverse and dispensable party from litigation in order to achieve diversity'") (quoting *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 763 (6th Cir. 1999)); *see also Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 232 F.3d 854, 860 (11th Cir. 2000) (explaining that court of appeals, like district courts, "can dismiss a dispensable party in order to retain jurisdiction").

The *Williams* court's ruling reflects Rule 21, which provides that "[p]arties may be dropped . . . by order of the court on . . . such terms as are just." Fed. R. Civ. P. 21. Indeed, the Supreme Court has explained that "it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989). Applying these principles, the *Williams* court dismissed the six physician defendants because (1) they were not indispensable to the action and (2) plaintiffs were free to proceed against those physicians separately in state court. *See Williams*, slip op. at 7 (Exh. B).

The situation here warrants similar treatment. In this case, too, there can be no doubt that even if a claim could be stated against Dr. Casals, he is not indispensable to the present action as that term is used in Rule 19, and therefore he may be severed. For a party to be deemed indispensable under Rule 19, the court must consider the following factors:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; [and] third, whether a judgment rendered in the person's absence will be adequate . . . .

None of these factors requires that the claim against Dr. Casals remain part of this action: there is no reason why he would be prejudiced by being severed out, there is no need for any protective measures, and his absence will have no impact on the judgment rendered. Moreover, there would be no apparent prejudice to plaintiff from such a severance because the proceedings in this case are at their very beginning stages, and plaintiff could, if he desired, seek to proceed against Dr. Casals in state court. *See Williams*, slip op. at 7 (Exh. B). In short, Dr. Casals in this case should be severed in accordance with Rule 21, and, therefore, plaintiff's motion to remand should be denied.

The allegations in the Complaint make clear that Dr. Casals has been fraudulently joined in this case and therefore the claims against him cannot defeat diversity jurisdiction. Further, remand should be denied because Dr. Casals can and should be severed under Rule 21 of the Federal Rules of Civil Procedure.

## CONCLUSION

For these reasons, as well as those stated in the Notice of Removal and Motion to Stay Proceedings Pending Transfer to Multidistrict Proceeding, Merck respectfully requests that the Court issue a stay of proceedings that would allow the MDL Court to address plaintiff's motion to remand. Alternatively, plaintiff's motion to remand should be denied.

DATED this 19th day of April 2006.

/s/ George R. Parker

Philip H. Butler (BUTL1716)
William C. McGowin (MCGOW6770)
George R. Parker (PARKG2248)
BRADLEY ARANT ROSE & WHITE LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700
Facsimile: (334) 956-7701
E-mail: pbutler@bradleyarant.com
wmcgowin@bradleyarant.com
gparker@bradleyarant.com

Attorneys for Defendant Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of April, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Tom Dutton, Esq.
Pittman Hooks Dutton Kirby & Hellums, P.C.
2001 Park Place North
1100 Park Place Tower
Birmingham, Alabama 35203

Randal H. Sellers, Esq.
Starnes & Atchison, LLP
Seventh Floor, 100 Brookwood Place
Post Office Box 598512
Birmingham, Alabama 35259-8512

and I hereby certify that I have mailed by U. S. Postal Service the document to the following non CM/ECF participants: N/A.

Respectfully submitted,

/s/ George R. Parker

Philip H. Butler (BUTL1716)
William C. McGowin (MCGOW6770)
George R. Parker (PARKG2248)
BRADLEY ARANT ROSE & WHITE LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700
Facsimile: (334) 956-7701
E-mail: pbutler@bradleyarant.com
wmcgowin@bradleyarant.com
gparker@bradleyarant.com

Attorneys for Defendant Merck & Co., Inc.