FILED
2005 Mar-31 PM 04:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| PAMELA MITCHELL, etc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. CV-05-S-0572-M |
| ) | |
| MERCK & COMPANY, et al., ) | |
| ) | |
| Defendants. ) | |

### PLAINTIFF'S MOTION TO REMAND

Comes now Pamela Mitchell, individually and as Administratrix of the Estate of Vincent Scott Mitchell, deceased, and, pursuant to 28 U.S.C. § 1447(c), moves this Court to remand the above-styled matter back to the Circuit Court of Etowah County, Alabama. In support of this motion to remand, plaintiff states as follows:

Basic Introductory Matters

1. On February 11, 2005, in the Circuit Court of Etowah County, Alabama, Pamela Mitchell commenced a civil action by filing a complaint. The named party-defendants were Merck & Company, Inc. ("Merck"); KSM Enterprises a/k/a KSM Enterprises, Inc. ("KSM"); and Dr. Pascual Herrera a/k/a Dr. Pat Herrera. Merck was identified as a pharmaceutical company and as the designer, manufacturer, marketer, distributor, and/or seller of the brand-name prescription drug Vioxx. Complaint ¶ 2. Dr. Herrera was identified as "one of [Vincent Scott Mitchell's] treating medical doctors that



prescribed the Vioxx medicine to the decedent." Id. KSM was identified as Vincent Scott Mitchell's' employer at the time of his death. Complaint at Count IX ¶ 2.

2. It was factually alleged that, on February 12, 2003, Vincent Scott Mitchell died as a result of a heart attack. Complaint at Count IX ¶ 3. Plaintiff alleged that this death was due to (a) the tortious misconduct on the part of Merck as a product supplier, (b) Dr. Herrera's medical negligence, and/or (c) aspects of the deceased's employment.

3. On March 17, 2005, Merck alone filed a notice of removal.

4. In its notice, Merck asserted a single source of federal subject-matter jurisdiction, namely diversity-of-citizenship jurisdiction. Notice of Removal ¶¶ 3 & 9.

5. In its notice, Merck acknowledged its belief that, at the time of his death, Vincent Scott Mitchell was a resident of Alabama. Notice of Removal ¶ 14. In addition, Merck stated its belief that Dr. Herrera and KSM are both citizens of Alabama. Notice of Removal at 5 n.3.

6. Merck contended that, as to the issue of removal jurisdiction and subject-matter jurisdiction, Dr. Herrera and KSM can be ignored because Merck "is the only arguably properly-named defendant" and because Dr. Herrera and KSM "are fraudulently joined." Notice of Removal ¶¶ 6, 13 & 17.

7. As to Dr. Herrera, Merck suggested that the "Plaintiff has asserted only one claim against Dr. Herrera, a claim for failure to warn" and contended that "there is no reasonable basis for predicting that Plaintiff could prevail on this claim against Dr. Herrera because she has not alleged a sufficient factual basis for the claim." Notice of Removal ¶ 18.

2

8. As to KSM, Merck wrote: "Here, KSM has been fraudulently misjoined because Plaintiff's workmen's compensation claim against KSM – the only claim she has asserted against KSM – has little or nothing to do with her tort claims against Merck and does not arise out of the same transaction or occurrence as the tort claims, as required by Rule 20 of the Federal Rules of Civil Procedure." Notice of Removal ¶ 26 (citation omitted). In a footnote, Merck observed that "Alabama courts typically sever workmen's compensation claims from tort claims" and contended that "[t]his makes it all the more appropriate for this Court to sever the workers' compensation claim against KSM and exercise jurisdiction over the claims against Merck." Notice of Removal at 10 n.5 (citations omitted).

9. Included among Merck's March 17th filings was a pleading entitled "Motion to Sever by Defendant Merck & Co., Inc." In that pleading, pursuant to Rule 21 of the Federal Rules of Civil Procedure, Merck moved this Court to sever the workers' compensation claim against KSM "and to drop KSM from this action." Effectively, Merck asks this Court to assume jurisdiction and, then, to sever out the claim for workers' compensation benefits, thereby creating a separate and distinct lawsuit in which the sole party-defendant is KSM.

General Legal Principles Regarding Removal Jurisdiction

10. Federal courts are courts of limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (1994).

11. Removal statutes must be strictly construed because Congressional intent in enacting removal legislation was to restrict removal jurisdiction. Shamrock Oil & Gas Corp. v. Streets, 313 U.S. 100, 108, 61 S. Ct. 868, 85 L. Ed. 2d 1214 (1921); Lane v. Champion Internat'l Corp., 827 F. Supp. 701, 705 (S.D. Ala. 1993).

12. Because federal jurisdiction is limited, the remanding of a removed case is favored where the existence of federal jurisdiction is not absolutely clear. Burns v. Windson Ins. Co., 31 F.3d 1092, 1095 (1994). "A presumption in favor of remand is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in its own courts." Klempner v. Northwestern Mut. Ins. Co., 196 F. Supp. 2d 1233, 1237 (S.D. Fla. 2001)(citations omitted).

13. The removing party bears the burden of demonstrating the existence of federal removal jurisdiction. Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 42 S. Ct. 35, 660 L. Ed. 2d 144 (1921); Leonard v. Enterprise Rent a Car, 279 F.3d 967, 972 (11th Cir. 2002). The removing party has the burden of proving any asserted fraudulent joinder. Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997). A claim of fraudulent joinder must be supported by clear and convincing evidence. Parks v. New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962), cert. denied, 376 U.S. 949, 84 S. Ct. 964, 11 L. Ed. 2d 969 (1964).

14. In determining whether a colorable claim is asserted against a non-diverse defendant, the court must "evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor."

Pacheo de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998). "[I]f there is even a possibility that [a] state court would find that the complaint states a cause of action against any ... resident defendant, [a court must] find that joinder was proper and remand [the] case to state court." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997).

### KSM and the Workers' Compensation Claim

15. As previously noted herein, along with its notice of removal, Merck filed a pleading entitled "Motion to Sever by Defendant Merck & Co., Inc." In that pleading, citing Rule 21 of the Federal Rules of Civil Procedure, Merck requested this Court "to sever Plaintiff's workmen's compensation claim against defendant [KSM] and to drop KMS from this action." The mere filing of such a motion to sever constitutes implicit recognition by Merck that the presence of the claim for workers' compensation benefits constitutes an impediment to establishing any federal jurisdiction at this time.

16. Pamela Mitchell asserts that the presence of the claim for workers' compensation benefits in her complaint precludes any exercise of removal jurisdiction and mandates the granting of her request for a remand.

17. "A civil action in any State court arising under the workmen's compensation laws of such State may not removed to any district court." 28 U.S.C. § 1445(c). Count IX of the present complaint unquestionably arising under Alabama's Workers' Compensation Act and is statutorily not removable.

18. As long as an asserted claim for workers' compensation benefits is part of a state court civil action, the state court civil action is not removable. See Bolton v. McWane Cast Iron & Pipe Co., 328 F. Supp. 1229, 1233 (N.D. Ala. 2004).

19. "[E]ntire cases are removed and not part of cases." Priest v. Sealift Services International, Inc., 953 F. Supp. 363, 363 (N.D. Ala. 1997)(citation omitted; remanding a civil action containing a claim for workers' compensation benefits along with tort claims). See also Whetstone v. Unitog, Inc., 960 F. Supp. 267 (N.D. Ala. 1997) ("Because an entire case must be removed, an anomaly is created when a classic claim for workers' compensation benefits is removed in the teeth of [28 U.S.C.] § 1445(c), along with a separate retaliation claim, the removing defendant knowing full well that the workers' compensation claim will have to be remanded." 960 F. Supp. at 269).

20. When Merck filed its notice of removal, the claim for workers' compensation death benefits asserted against KSM was part of the complaint and part of a single lawsuit or case. Merck must remove the entire case **and must show removal jurisdiction as to the entire case at the time of the removal**. Merck cannot ask this Court to sever out the claim for workers' compensation benefits, to remand that claim, but to retain subject-matter jurisdiction over the tort claims asserted against Merck. This Court cannot entertain a motion to sever **until Merck first establishes removal jurisdiction**. Presently, the entire case contains a claim that is statutorily non-removable; therefore, pursuant to the analysis applied in Priest, a remand is mandated.

21. In an attempt to avoid the mandated consequences of the presence of the asserted claim for workers' compensation death benefits, Merck sought to rely on the Eleventh Circuit's recognition that, in certain situations, a "'[m]isjoinder [of claims] may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of [establishing] a cause of action.'" Notice of Removal ¶ 25 (quoting

Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996), abrogated on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000).

22. Merck ignored critical language in the Tapscott opinion and a germane opinion applying Tapscott where a plaintiff joined a claim for workers' compensation benefits with tort claims, namely Brooks v. Paulk & Cope, Inc., 176 F. Supp. 2d 1270 (M.D. 2001).

23. As noted by Judge Albritton in Brooks, to utilize the result in Tapscott, "it is not sufficient to establish merely that [some] defendants have been misjoined;" instead, "[t]he misjoinder must be so egregious as to constitute fraudulent joinder." 176 F. Supp. 2d at 1274-75. (citations omitted). As further noted by Judge Albritton, in Tapscott, the misjoinder was deemed egregious because "one plaintiff class had claims against one defendant and another plaintiff class had claims against another defendant" with "[t]he only commonality between the claims [being] that the defendants allegedly had violated the same state statutes." 176 F. Supp. 2d at 1275 (citation omitted). In Brooks, Judge Albritton ordered a remand where, in a single complaint, the plaintiff sought workers' compensation benefits from his employer and civil damages from product suppliers.

24. In the present matter, there are not two sets of distinct plaintiffs asserting totally unrelated claims. All the claims arise out of Vincent Scott Mitchell's death that was allegedly caused by his consumption of Vioxx, by Dr. Herrera's medical negligence, by his work, or by some combination of these three things. There is an absence of the egregious conduct necessary to evoke the result in Tapscott.

25. In Brooks, Judge Albritton wrote:

> Furthermore, and perhaps of more significance, there appears to at least to be a question under Alabama

> law as to whether the joinder of a workers' compensation claim and tort claim against a third party is proper permissive joinder. While the Alabama Court of Civil Appeals noted that that the "usual procedure" is to sever such claims, the court has been cited to no authority, and is aware of none, which states that a state court must sever such claims. In absence of such authority, the Plaintiffs' actions in joining those claims can hardly be viewed as egregious. In addition, although the Defendants apparently contend that the Plaintiffs joined these Defendants in one action to avoid federal jurisdiction, it is irrelevant whether a plaintiff joins defendants with such intent as long as legitimate claims are alleged against all defendants and the plaintiff has the intent to pursue a judgment against the defendants. There is absolutely nothing in the record which would indicate that the Plaintiffs do not intend to seek a judgment against all of the Defendants. This court cannot conclude, therefore, that, to the extent that there may be misjoinder in this case, the Plaintiffs have engaged in egregious misjoinder. Accordingly, the court concludes that the resident Defendant has not been fraudulently joined.

176 F. Supp. 2d at 1277 (citations omitted).

26. Pamela Mitchell would inform this Court that, in lieu of severing out a claim for workers' compensation and creating two separate lawsuits, Alabama state court judges are permitted to use Rule 42(b) of the Alabama Rules of Civil Procedure in situations where a claim for workers' compensation benefits is joined with tort claims. If Rule 42(b) is utilized, there remains a single lawsuit, but there are separate trials. See, for example, Bryant v. Flagstar Enterprise, Inc., 717 So. 2d 400 (Ala. Civ. App. 1998). See also Whetstone v. Unitog, Inc., 960 F. Supp. 267 (N.D. Ala. 1997), wherein Judge Acker discussed the "removal" problem created when an Alabama state court judge utilizes Rule 42(b), as opposed to Rule 21, and orders separate trials of claims retained in a single lawsuit.

27. In summation, the presence of the claim for workers' compensation benefits makes the entire case not removable. 28 U.S.C. § 1445(c); Priest v. Sealift Services International, Inc., 953 F. Supp. 363 (N.D. Ala. 1997); Bolton v. McWane Cast Iron & Pipe Co., 328 F. Supp. 2d 1229 (N.D. Ala. 2004). This Court does not possess the removal jurisdiction required to entertain Merck's motion to sever out the claim for workers' compensation benefits and to create a separate lawsuit containing only the claim asserted against KSM, the employer. In addition, Merck fails to show the egregious conduct necessary to evoke fraudulent joinder as a reason to ignore the asserted claim for workers' compensation benefits. Brooks v. Paulk & Cope, Inc., 176 F. Supp. 2d 1270 (M.D. Ala. 2001). KSM and the claim asserted against KSM cannot be ignored nor handled by this Court. The entire matter must be remanded because there is no removal jurisdiction to support Merck's removal.

### Dr. Herrera and the Medical-Negligence Claim

28. Count VIII of the Complaint was directed solely at Dr. Herrera and fictitiously identified healthcare providers. Count VIII contained the following three paragraphs:

> 63. On or about February 12, 2003 and for some time before, Dr. Pat Herrera, M.D. and one or more of the fictitious party defendants undertook to provide and did provide medical services to Vincent Scott Mitchell. All of these services were provided to the Plaintiff in Etowah County, Alabama.
>
> 64. Dr. Pat Herrera, M.D. and all of the doctors negligently or wantonly prescribed Vioxx to Vincent Scott Mitchell and as a result, Mr. Mitchell died.
>
> 65. Defendants, negligently or wantonly failed to give reasonable and adequate warning of dangers known to Defendants, or which in the exercise of reasonable care

should have been known to the Defendants, and which Alabama Plaintiffs could not obviously discover.

29. In Count VIII, Pamela Mitchell asserted a medical-negligence cause of action and not a products-liability cause of action against a healthcare provider. She alleged that Dr. Herrera breached a medical standard of care in connection with his prescribing Vioxx to the deceased. She alleged that Dr. Herrera prescribing Vioxx as he did constituted a breach of the standard. In addition, she specifically alleged that Dr. Herrera failed to properly apprise his patient of the dangers associated with taking Vioxx; in effect, she asserted that there was a breach of the duty to secure this patient's informed consent to a course of treatment. These medical-negligence theories are distinct from the theories asserted against Merck.

30. Merck fails to demonstrate that Pamela Mitchell fraudulently joined Dr. Herrera as a party-defendant. Applying Alabama substantive law, Dr. Herrera would not be entitled to a Rule 12(b)-based dismissal as a party-defendant. Applying the legal principles announced by the Eleventh Circuit, this Court should not conclude that Dr. Herrera was fraudulently joined.

31. In contending that Dr. Herrera was fraudulently joined, Merck incorrectly suggests that Pamela Mitchell "has asserted only one claim against Dr. Herrera, a claim for failure to warn." Notice of Removal ¶ 18. Yet, as clearly indicated in Count VIII, Dr. Herrera is not being sued as a product supplier; instead, he is being sued as a healthcare provider who provided medical services to Vincent Scott Mitchell. Count VIII implicitly contains claims that Dr. Herrera breached a medical-care standard of care by prescribing Vioxx and/or by not securing his patient's informed consent. Any failure to warn on Dr. Herrera's part was directed at his obligation as a physician to apprise his patient of the

risks associated with his recommended course of treatment, and not any duties imposed on a product supplier.

32. In its notice, Merck cited several opinions and relied most heavily on the results in In re Rezulin Prods. Liab. Litig., 133 F. Supp. 2d 272 (S.D.N.Y. 2001), and In re Bacyol Prods. Litig., 2003 WL 21223842 (D. Minn. May 27, 2003). Merck referred to the latter opinion as "Spier." Yet, Merck failed to cite or discuss the numerous reported opinions that seriously undermine its contention in the present matter and its reliance on these two opinions.

33. In Crone v. Pfizer, Inc., 2004 WL 1946386 (N.D. Cal. Sep. 1, 2004), the court specifically addressed Pfizer's fraudulent-joinder argument that was predicated on these same two opinions:

> The Pfizer Defendants suggest that Plaintiffs' Complaint is internally inconsistent because it alleges that the Pfizer Defendants failed to warn prescribing physicians of the risks but also alleges that the physician failed to warn his patient of the risks. The Pfizer Defendants argue that by alleging the former, Plaintiffs refute the viability of the latter and cites the holdings in In re Baycol Prods. Litig., 2003 WL 21223842 (D. Minn. 2003) and In re Rezulin Prods. Liabl. Litig., 133 F. Supp. 2d 272 (S.D.N.Y. 2001), both factually similar to the case at bar, to support their argument.
>
> In both Baycol and Rezulin, the plaintiffs brought suit against pharmaceutical manufacturers and their prescribing physicians for injuries they sustained that they alleged were caused by the ingestion of a prescribed medication. The physician in each case was a non-diverse defendant. In each case, the manufacturing defendants removed the action to federal court arguing that because the physician was fraudulently joined, the federal court had diversity jurisdiction. In each case, the district court agreed and denied the plaintiff's motion for remand, finding that the plaintiff had failed to establish a viable claim against the physician. Both courts found that the plaintiffs' claims

that the pharmaceutical manufacturers had concealed material facts about the safety of the drugs from prescribing physicians refutes any allegation that the prescribing physicians knew or should have known about the risks.

The Court is not persuaded to find the same result in the case at bar. In both Baycol and Rezulin, the district courts held that internally inconsistent pleadings in pharmaceutical products liability cases where the manufacturer and the prescribing physician are named defendants support a finding of fraudulent joinder. However, in nearly identical circumstances, another court came to the opposite conclusion. In Ritchie v. Warner-Lambert Co., 2001 U.S. Dist. LEXIS 6783, at * 4-5 (E.D. La. 2001)[also found at 2001 WL 527501], the district court rejected the drug manufacturing defendants' argument that a physician cannot be liable for failure to warn where the complaint specifically alleges that the manufacturers represented to the physician that the drug was safe because "when a plaintiff sues multiple defendants, the allegations against the multiple defendants are often inconsistent." See also Barragon v. Warner-Lambert Co., 216 F. Supp. 2d 627 (W.D. Tex. 2002).

The difference between Richie and Barragon on the one hand, and Baycol and Rezulin on the other seems to lie in the viability of the claim alleged against the non-diverse physician, not in the consistency or inconsistency of the pleadings across multiple defendants. For example, in Baycol, the court found that the plaintiff's complaint did not include any factual assertions to support the conclusory allegations that the physician knew or should have known of the risks. Similarly, in Rezulin, the court found that the plaintiffs "do not come close to alleging that Oblena proximately caused their injuries or that he knew or should have known of the risks of [the drug]." Id. at 295. "That Mr. Oblena is even a physician is impossible to determine from the face of the complaint .... In fact, it is impossible to determine anything about Oblena, because he is not mentioned in the complaint, other than in the introduction. He is simply included in all of the allegations against 'defendants' in general." Id. at 294-95. In Ritchie, however, the court found that the plaintiff's claim that the physician failed to follow the drug's package insert instructions and warnings, failed to monitor and evaluate the patient for adverse effects of the drug, and failure to

> warn the patient of the risks were sufficient to establish a viable cause of action against the non-diverse defendant. The district court remanded the action to state court finding that the non-diverse physician had not been fraudulently joined and that removal was improper.
>
> The Court finds that here, the cause of action Plaintiffs allege against [Dr.] Jennings most closely resembles the one alleged against the prescribing physician in Ritchie. Unlike the Baycol and Rezulin plaintiffs, Plaintiffs in the case at bar have asserted in their Complaint facts that support the allegation that Dr. Jennings knew or should have known that Neurontin was risky. As described above, Plaintiffs claim that Dr. Jennings owed the decedent specific duties to investigate any risks associated with ingesting Neurontin, to warn the decedent of nay risks, to follow the instructions on the package insert, and to prescribe proper dosages and offer safer alternatives, and that Dr. Jennings breached those duties. .... The cause of action against the prescribing physician in the Baycol case was far more general and conclusory than the one at issue in this case. Plaintiffs here have also done far more than the plaintiff in Rezulin, who apparently did nothing more than name the prescribing physician as a defendant. The Court finds that as in Ritchie, Plaintiffs have alleged a viable cause of action for medical negligence against the prescribing physician.

2004 WL 1946386 at * 3-5.

34. With regard to claims asserted against a non-diverse physician, Pamela Mitchell's complaint is far more akin to the complaints in Crone, Ritchie, and Barragan than the complaints in Baycol and Rezulin. While Counts I through VII of Pamela Mitchell's complaint are directed solely at Merck, Count VIII is directed solely at Dr. Herrera and contains only claims of medical negligence. Pamela Mitchell certainly did more than mention Dr. Herrera at the begin of the complaint and generally lump him with Merck as to all asserted causes of action. Instead, Pamela Mitchell carefully isolated her claims against Dr. Herrera in a separate count. Moreover, she satisfied Alabama pleading

13

requirements for asserting a medical-negligence cause of action against a physician. She made specific medical-negligence factual allegations. She would survive a motion to dismiss filed by Dr. Herrera in the state court. Employing the general legal principles regarding fraudulent joinder announced by the Eleventh Circuit, it is not possible to conclude that Dr. Herrera was fraudulently joined as a party-defendant.

35. In summation, in well reasoned opinions, applying similar principles as this Court must apply, other federal district judges have rejected the "inconsistency" argument presented by Merck to support its contention that Dr. Herrera was fraudulently joined. In her complaint, Pamela Mitchell asserted a viable medical-negligence cause of action against Dr. Herrera and would be entitled to recover monetary damages from Dr. Herrera if she proves her factual allegations. Dr. Herrera was not fraudulently joined and cannot be ignored in determining if there is complete diversity. Because he must be considered and because he is an Alabama resident, there is an absence of complete diversity.

## Concluding Remarks

36. Contrary to Merck's desire, neither KSM nor Dr. Herrera can be ignored in deciding whether this Court may exercise its limited removal jurisdiction. The presence of the claim for workers' compensation benefits asserted against KSM is an absolute impediment to any exercise of removal jurisdiction. Merck failed to prove egregious conduct in connection with the asserting of such a claim against KSM in a complaint asserting tort claims against other defendants. Pamela Mitchell pled viable or colorable medical-negligence claims against Dr. Herrera. Such medical-negligence claims were

properly joined with the other asserted claims, including the claims asserted against Merck. There is an absence of complete diversity. A remand is mandated.

37. Pamela Mitchell reserves the right to submit a memorandum brief in further support of his motion to remand.

WHEREFORE, for the reasons stated herein, Pamela Mitchell again asks this Court to enter any order remanding the matter to the Circuit Court of Etowah County, Alabama.

Respectfully submitted,

**s/ Jeffrey C. Kirby**
Of Counsel for Plaintiff
Bar Number: ASB-7574-I66J
Pittman Hooks Dutton Kirby & Hellums, P.C.
2001 Park Place North
1100 Park Place Tower
Birmingham, Alabama 35203
(205) 322-8880
(205) 328-2711 facsimile
Email: PHDKH-efiling@pittmanhooks.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing motion to remand upon all counsel of record by placing same in the United States Mail, proper first-class postage prepaid and properly addressed, to:

Also Representing Plaintiff:

    Daniel B. King
    KING & KING, P.C.
    The King Building
    757 Chestnut Street
    Gadsden, Alabama 35901

<u>Representing Merck & Co., Inc.</u>:

>Thomas E. Walker
>Helen Kathryn Downs
>William D. Jones III
>JOHNSTON BARTON PROCTOR & POWELL LLP
>2900 AmSouth/Harbert Plaza
>1901 Sixth Avenue, North
>Birmingham, Alabama 35203-2618

Done this 31st day of <u>March,</u> 2005.

>**s/ Jeffrey C. Kirby**
>Of Counsel for Plaintiff
>Bar Number: ASB-7574-I66J
>Pittman Hooks Dutton Kirby & Hellums, P.C.
>2001 Park Place North
>1100 Park Place Tower
>Birmingham, Alabama 35203
>(205) 322-8880
>(205) 328-2711 facsimile

Email: <u>PHDKH-efiling@pittmanhooks.com</u>