FILED
2005 Jun-16 AM 11:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION



EXHIBIT

_N_

| | | |
|---|---|---|
| JUANELL Y. McBRAYER WILKES, as Administratrix of the Estate of David L. McBrayer, deceased, and EUNICE M. DABBS, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | CIVIL ACTION NUMBER CV-05-RRA-1214-S |
| MERCK & CO., INC.; et al., | ) ) ) | |
| Defendants. | ) | |

## MOTION TO REMAND

Come now Juanell Y. McBrayer Wilkes, as Administratrix of the Estate of David L. McBrayer, deceased, and Eunice M. Dabbs, and, pursuant to 28 U.S.C. § 1447(c), move this Court to remand the above-styled matter back to the Circuit Court of Jefferson County, Alabama. In support of this motion to remand, plaintiffs state as follows:

### Introductory Matters

1. On April 29, 2005, in the Circuit Court of Jefferson County, Alabama, plaintiffs commenced a civil action by filing a complaint. The named party-defendants were Merck & Company, Inc.; Pfizer, Inc.; Pharmacia Corporation

f/k/a 1933 Monsanto; G.D. Searle, LLL; Gene Watterson, M.D.; Joseph Singleton, M.D.; Nellie Cassandra Comer, M.D.; and Wallace Purdy, M.D.

2. In the complaint, Dr. Watterson is described as "a treating physician [who] prescribed the brand-name prescription drug, Celebrex (celecoxib) to ... David L. McBrayer." Complaint ¶ 8.

3. In the complaint, Drs. Singleton, Comer, and Purdy are identified as Eunice Dabbs's treating physicians. Complaint ¶¶ 9-11. It is alleged that Drs. Singleton and Comer both prescribed "Celebrex (celecoxib) and Vioxx (rofecoxib)" to her. Complaint ¶¶ 9-10. It is alleged that Dr. Purdy prescribed just Vioxx to her. Complaint ¶ 11.

4. In the complaint, it is further alleged (a) that David McBrayer resided in Alabama, (b) that Eunice Dabbs resides in Alabama, and (c) that all four treating physicians practiced in Alabama. Complaint ¶¶ 1-2 & 8-11.

5. Count VIII of the complaint is entitled "Medical Malpractice" and asserts a medical-negligence claim against Drs. Watterson, Singleton, Comer, and Purdy. Complaint ¶¶ 60-63. Specifically, it is alleged that these treating physicians wrongfully "prescribed and/or provided samples of the brand-name prescription drugs Vioxx and Celebrex to [David McBrayer or Eunice Dabbs] with actual and/or constructive knowledge of the risks and dangers associated with the use of Vioxx and Celebrex." Complaint ¶ 63.

2

6. On June 3, 2005, Merck filed a Notice of Removal.

7. Also, on June 3, 2005, Pfizer, Inc.; Pharmacia Corporation f/k/a 1933 Monsanto; Pharmacia & Upjohn Company; and G.D. Searle, LLC filed a joint pleading entitled "Joinder in Notice of Removal."

8. In the notice of removal, Merck asserted a single source of federal subject-matter jurisdiction, namely diversity-of-citizenship jurisdiction. Notice of Removal ¶¶ 3-4.

9. In the notice of removal, while observing that the citizenship of each treating physician is not alleged in the complaint, Merck neither asserted that these treating physicians are not Alabama residents nor proffered any evidence that they are not Alabama residents. ¶ 13 & n.1.

10. In the notice of removal, Merck contended that, as to the issue of removal jurisdiction and subject-matter jurisdiction, Drs. Watterson, Singleton, Comer, and Purdy can be ignored because each physician was fraudulently joined as a party-defendant. Notice of Removal ¶¶ 13-24.

General Legal Principles as to Removal Jurisdiction

11. Federal courts are courts of limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (1994).

12. Removal statutes must be strictly construed because Congressional intent in enacting removal legislation was to restrict removal jurisdiction. Shamrock Oil & Gas Corp. v. Streets, 313 U.S. 100, 108, 61 S. Ct. 868, 85 L. Ed. 2d 1214 (1921); Lane v. Champion Internat'l Corp., 827 F. Supp. 701, 705 (S.D. Ala. 1993).

13. Because federal removal jurisdiction is very limited, the remanding of a removed case is favored where the existence of federal subject-matter jurisdiction is not absolutely clear. Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (1994). "A presumption in favor of remand is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in its own courts." Klempner v. Northwestern Mut. Ins. Co., 196 F. Supp. 2d 1233, 1237 (S.D. Fla. 2001)(citations omitted).

14. The removing party bears the burden of demonstrating the existence of federal removal jurisdiction. Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 42 S. Ct. 35, 660 L. Ed. 2d 144 (1921); Leonard v. Enterprise Rent a Car, 279 F.3d 967, 972 (11th Cir. 2002). The removing party has the burden of proving any asserted fraudulent joinder. Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997). A claim of fraudulent joinder must be supported by clear and convincing

evidence. Parks v. New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962), cert. denied, 376 U.S. 949, 84 S. Ct. 964, 11 L. Ed. 2d 969 (1964).

15. In determining whether a colorable claim is asserted against a non-diverse defendant, the court must "evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." Pacheo de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998). "[I]f there is even a possibility that [a] state court would find that the complaint states a cause of action against any ... resident defendant, [a court must] find that joinder was proper and remand [the] case to state court." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997).

## Physicians Not Fraudulently Joined

16. Merck proffered no evidence that, like David McBrayer, at the time of his death, and Eunice Dabbs, presently, Drs. Watterson, Singleton, Comer, and Purdy are not Alabama residents.

17. In its notice of removal, Merck wrote: "Specifically, in light of the factual allegations in the Complaint, 'there is no possibility that the plaintiff[s] can prove a cause of action against the resident (non-diverse)' defendants. Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998)." Notice of Removal ¶ 14. After pointing out the factual allegations in the complaint regarding

5

Merck's and the other Pharmaceutical Company Defendants' hiding of the "risks and dangers" associated with Vioxx and Celebrex, Merck contended that the present plaintiffs cannot pursue a medical-negligence claim based on wrongfully prescribing such drugs "with actual and/or constructive knowledge of the risks and dangers associated with the use of Vioxx and Celebrex." Notice of Removal ¶ 19. According to Merck, the present plaintiffs cannot alternatively argue (a) that Merck concealed material information from the treating physicians, who would have acted differently if properly warned regarding the risks and dangers associated with Vioxx and Celebrex or (b) that treating physicians knew sufficient information about Vioxx and Celebrex to appreciate that neither should have been prescribed to David McBrayer and Eunice Dabbs.

18. Merck fails to demonstrate that Drs. Watterson, Singleton, Comer, and Purdy are fraudulently joined as party-defendants. Applying Alabama substantive law, these treating physicians would not be entitled to a Rule 12(b)(6)-based dismissal as party-defendants. Applying the legal principles announced by the Eleventh Circuit, this Court should not conclude that these treating physicians were fraudulently joined.

19. While citing several opinions in its notice of removal, Merck misrepresented critical information regarding some of the cited opinions and totally ignored numerous opinions that seriously undermine its contentions.

20.     Merck cited the opinion in <u>In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation</u>, 220 F. Supp. 2d 414 (E.D. Pa. 2002). <u>Notice of Removal</u> ¶ 21. Specifically, Merck directed this Court's attention to page 424 of that opinion. On page 424 of that opinion, the trial court was discussing whether pharmacies and sales representatives were fraudulently joined, not the possible fraudulent joinder of treating physicians. Earlier in the opinion, there was a discussion of the fraudulent joinder of treating physicians. 220 F. Supp. 2d at 422. In one lawsuit, there were fifty named plaintiffs, and Dr. Ditta, Yount, and Hersh were named defendants. Forty-eight of the plaintiffs were not treated by or had any contact with these physicians. Plaintiff Crystal Gatlin alleged that she had been treated by Dr. Ditta, and Plaintiff Verna Brown alleged that she had been treated by Dr. Yount. The trial court found that "AHP has clearly met its heavy burden of establishing that Dr. Hersh was fraudulently joined as to all plaintiffs, Dr. Ditta was fraudulently joined except as to plaintiff Crystal Gatlin and Dr. Yount was fraudulently joined except as to plaintiff Verna Brown." 220 F. Supp. 2d at 422. Therefore, the trial court granted a remand as to Crystal Gatlin and Verna Brown. In other words, a treating physician was not fraudulently joined as to these two plaintiffs. See also <u>Greene v. Wyeth</u>, 344 F. Supp. 2d 674 (D. Nev. 2004), wherein the court severed out the two

7

plaintiffs who were treated by the physician named as party-defendant and remanded their claims back to state court.

21. Obviously, in <u>Diet Drugs</u> and <u>Greene</u>, the courts found that plaintiffs could simultaneously prosecute claims against manufacturer-defendants and treating physicians in scenarios such as the present matter. In the present matter, Juanell Wilkes alleged that Dr. Watterson was David McBrayer's treating physician, and Eunice Dabbs alleged that Drs. Singleton, Comer, and Purdy were her treating physicians. Following the analyses employed in <u>Diet Drugs</u> and <u>Greene</u>, Merck has failed to meet its burden of showing that these treating physicians were fraudulently joined in the present lawsuit.

22. In <u>Crone v. Pfizer, Inc.</u>, 2004 WL 1946386 (N.D. Cal. Sep. 1, 2004), the trial court specifically addressed Pfizer's fraudulent-joinder argument that was predicated on <u>In re Rezulin Prods. Liab. Litig.</u>, 133 F. Supp. 2d 272 (S.D.N.Y. 2001), and <u>In re Bacyol Prods. Litig.</u>, 2003 WL 21223842 (D. Minn. May 27, 2003)(often referred to as "Spier"), the two opinions most heavily relied upon by Merck in its notice of removal. The <u>Crone</u> court wrote:

> The Pfizer Defendants suggest that Plaintiffs' Complaint is internally inconsistent because it alleges that the Pfizer Defendants failed to warn prescribing physicians of the risks but also alleges that the physician failed to warn his patient of the risks. The Pfizer Defendants argue that by alleging the former, Plaintiffs refute the viability of the latter and cites the holdings in <u>In re Baycol Prods. Litig.</u>, 2003 WL 21223842 (D. Minn.

8

2003), and In re Rezulin Prods. Liabl. Litig., 133 F. Supp. 2d 272 (S.D.N.Y. 2001), both factually similar to the case at bar, to support their argument.

In both Baycol and Rezulin, the plaintiffs brought suit against pharmaceutical manufacturers and their prescribing physicians for injuries they sustained that they alleged were caused by the ingestion of a prescribed medication. The physician in each case was a non-diverse defendant. In each case, the manufacturing defendants removed the action to federal court arguing that because the physician was fraudulently joined, the federal court had diversity jurisdiction. In each case, the district court agreed and denied the plaintiff's motion for remand, finding that the plaintiff had failed to establish a viable claim against the physician. Both courts found that the plaintiffs' claims that the pharmaceutical manufacturers had concealed material facts about the safety of the drugs from prescribing physicians refutes any allegation that the prescribing physicians knew or should have known abut the risks.

The Court is not persuaded to find the same result in the case at bar. In both Baycol and Rezulin, the district courts held that internally inconsistent pleadings in pharmaceutical products liability cases where the manufacturer and the prescribing physician are named defendants support a finding of fraudulent joinder. However, in nearly identical circumstances, another court came to the opposite conclusion. In Ritchie v. Warner-Lambert Co., 2001 U.S. Dist. LEXIS 6783, at * 4-5 (E.D. La. 2001)[also found at 2001 WL 527501], the district court rejected the drug manufacturing defendants' argument that a physician cannot be liable for failure to warn where the complaint specifically alleges that the manufacturers represented to the physician that the drug was safe because "when a plaintiff sues multiple defendants, the allegations against the multiple defendants are often inconsistent." See also Barragon v.

Warner-Lambert Co., 216 F. Supp. 2d 627 (W.D. Tex. 2002).

The difference between Richie and Barragon on the one hand, and Baycol and Rezulin on the other seems to lie in the viability of the claim alleged against the non-diverse physician, not in the consistency or inconsistency of the pleadings across multiple defendants. For example, in Baycol, the court found that the plaintiff's complaint did not include any factual assertions to support the conclusory allegations that the physician knew or should have known of the risks. Similarly, in Rezulin, the court found that the plaintiffs "do not come close to alleging that Oblena proximately caused their injuries or that he knew or should have known of the risks of [the drug]." Id. at 295. "That Mr. Oblena is even a physician is impossible to determine from the face of the complaint .... In fact, it is impossible to determine anything about Oblena, because he is not mentioned in the complaint, other than in the introduction. He is simply included in all of the allegations against 'defendants' in general." Id. at 294-95. In Ritchie, however, the court found that the plaintiff's claim that the physician failed to follow the drug's package insert instructions and warnings, failed to monitor and evaluate the patient for adverse effects of the drug, and failure to warn the patient of the risks were sufficient to establish a viable cause of action against the non-diverse defendant. The district court remanded the action to state court finding that the non-diverse physician had not been fraudulently joined and that removal was improper.

The Court finds that here, the cause of action that the Plaintiffs allege against [Dr.] Jennings most closely resembles the one alleged against the prescribing physician in Ritchie. Unlike the Baycol and Rezulin plaintiffs, Plaintiffs in the case at bar have asserted in their Complaint facts that support the allegation that Dr. Jennings knew or should have known that Neurontin was risky. As described above, Plaintiffs claim that Dr.

10

> Jennings owed the decedent specific duties to investigate any risks associated with ingesting Neurontin, to warn the decedent of any risks, to follow the instructions on the package insert, and to prescribe proper dosages and offer safer alternatives, and that Dr. Jennings breached those duties. ... The cause of action against the prescribing physician in the Baycol case was far more general and conclusory than the one at issue in this case. Plaintiffs here have also done far more than the plaintiff in Rezulin, who apparently did nothing more than name the prescribing physician as a defendant. The Court finds that as in Ritchie, Plaintiffs have alleged a viable cause of action for medical negligence against the prescribing physician.

2004 WL 1946386 at * 3-5.

23. With regard to the medical-negligence cause of action asserted against Drs. Watterson, Singleton, Comer, and Purdy, the present complaint is far more akin to the complaints in Crone, Ritchie, and Barragan than the complaints in Baycol and Rezulin. Drs. Watterson, Singleton, Comer, and Purdy are specifically identified as treating physicians who prescribed the subject medication or medications. Moreover, a separate count is devoted to the treating physicians alone, as opposed to lumping the treating physicians with the product-supplier defendants in asserting various products-liability causes of action. A medical-negligence claim is asserted against the treating physicians, a cause of action that is inapplicable to the product-supplier defendants.

24. In summation, no procedural rule estops the present plaintiffs from contending that, despite the alleged misconduct of Merck, the treating physicians

possessed sufficient information to appreciate that prescribing Vioxx and/or Celebrex was contraindicated for David McBayer and/or Eunice Dabbs. In the opinions discussed herein, other courts have found no such procedural rule and held that a patient or the personal representative of a deceased patient may simultaneously prosecute products-liability claims against drug companies and a medical-negligence claim against the prescribing physician. In those instances where a court determined that the treating physician had been fraudulently joined, there were significant indications that the plaintiff was not serious about prosecuting any claim against the treating physicians, for example, mentioning the treating physician only once in the complaint or not asserting a distinct medical-negligence claim. In the present matter, Merck pointed out no such significant indications but, instead, argued only that it was inconsistent to allege that Merck "deceived" the treating physicians and that the treating physicians knew, actually or constructively, of the risks or dangers associated with these two medications. Merck's sole argument is inadequate to meet the heavy burden of demonstrating that Drs. Watterson, Singleton, Comer, and Purdy were fraudulently joined. A remand is appropriate and should be granted.

25.    Juanell Wilkes and Eunice Dabbs reserve the right to submit a memorandum brief in further support of their motion to remand.

WHEREFORE, for the reasons stated herein, Juanell Wilkes and Eunice Dabbs again ask this Court to enter an order remanding this matter back to the Circuit Court of Jefferson County, Alabama.

s/ Tom Dutton
TOM DUTTON (ASB-2059-U50T)

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

COUNSEL FOR DEFENDANT

John David Owen, Esquire
F. M. Haston, III, Esquire
Anne Marie Seibel, Esquire
F. Wendell Allen, Esquire
BRADLEY, ARANT, ROSE & WHITE, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203

Lawrence B. Clark, Esquire
Gilbert C. Steindorff, IV, Esquire
Wendy Madden, Esquire
Adams & Reese/Lange Simpson, LLP
2100 3rd Avenue North, Ste. 1100
Birmingham, Alabama 35203

and I hereby certify that I have mailed the document by United States Postal Service to the following non-CM/ECF participants:

**None.**

s/ Tom Dutton
TOM DUTTON (ASB-2059-U50T)